*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0324p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

HENSLEY MANUFACTURING, INCORPORATED,
                *Plaintiff-Appellant,*

   *v.*

PROPRIDE, INCORPORATED; SEAN
WOODRUFF; JAMES C. HENSLEY,
                *Defendants-Appellees.*

No. 08-1834

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-10425—Marianne O. Battani, District Judge.

Argued: June 19, 2009

Decided and Filed: September 3, 2009

Before: McKEAGUE and WHITE, Circuit Judges; MARBLEY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Craig A. Redinger, YOUNG BASILE, Ann Arbor, Michigan, for Appellant. Josh J. Moss, BARRIS, SOTT, DENN & DRIKER, PLLC, Detroit, Michigan, John F. Early, Jr., LAW OFFICE, Fenton, Michigan, for Appellees. **ON BRIEF:** Marshall G. MacFarlane, YOUNG BASILE, Ann Arbor, Michigan, for Appellant. Josh J. Moss, BARRIS, SOTT, DENN & DRIKER, PLLC, Detroit, Michigan, John F. Early, Jr., LAW OFFICE, Fenton, Michigan, for Appellees.

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

———————

**OPINION**

———————

McKEAGUE, Circuit Judge.    Hensley Manufacturing, Inc. ("Hensley Manufacturing") and ProPride, Inc., ("ProPride") both manufacture and sell trailer hitches for "RVers" everywhere.  And, more importantly, both companies manufacture and sell trailer hitches designed by the same man:  James Hensley (also known as "Jim Hensley").  Hensley Manufacturing claims that ProPride's use of Jim Hensley's name in its advertising material is likely to confuse consumers and infringes upon Hensley Manufacturing's registered trademark in the name "Hensley."

Hensley Manufacturing sued ProPride, its founder Shawn Woodruff, and Jim Hensley (collectively, "defendants") in federal district court, asserting, *inter alia*, a claim for trademark infringement under the Lanham Act.   Defendants filed separate motions to dismiss the complaint, and Hensley Manufacturing filed its own motion for a preliminary injunction.  The district court granted defendants' motions to dismiss and denied Hensley Manufacturing's motion for a preliminary injunction, holding that ProPride's use of Jim Hensley's name fell under the fair use exception to trademark infringement claims.

On appeal, Hensley Manufacturing argues that the complaint adequately stated a claim for trademark infringement.  It also argues that the district court prematurely dismissed the complaint on the basis of the affirmative defense of fair use and improperly considered matters outside the complaint.  We affirm the district court's dismissal of the complaint.

## I.  BACKGROUND

Hensley Manufacturing is a Michigan corporation with its principal place of business in Davison, Michigan.  It designs, engineers, manufactures, and sells trailer-towing products.  ProPride is a Michigan corporation with its principal place of business

in Grand Blanc, Michigan.  ProPride also designs, engineers, manufactures, and sells trailer-towing  products in competition with Hensley Manufacturing.

Hensley Manufacturing alleges that on February 22, 1994, it purchased the trailer hitch business of Jim Hensley—an inventor and designer of trailer hitches—as a going concern.[1]  The company marketed and sold Jim Hensley's trailer hitch under the name "Hensley Arrow" or "Arrow."  The company also registered a trademark for the name "Hensley" as well as the "Hensley Arrow" graphic design.[2]  Hensley Manufacturing alleges that these trademarks have become widely known and respected in the marketplace for trailers and recreational vehicles, or "RVs."

Sean Woodruff worked as a sales and marketing director at Hensley Manufacturing until July 2007, when he left and formed ProPride.  At about the same time, Jim Hensley also split with Hensley Manufacturing.  Hensley designed a new trailer hitch and licensed the new design to ProPride.  ProPride began marketing this hitch as the "ProPride Pivot Point Projection Hitch," or "3P Hitch."

On January 30, 2008, Hensley Manufacturing sued ProPride, Sean Woodruff, and Jim Hensley in the United States District Court for the Eastern District of Michigan. Hensley Manufacturing brought claims of trademark infringement and unfair competition in violation of the Lanham Act, common law trademark infringement, breach of contract against Jim Hensley, misappropriation of trade secrets against Woodruff and ProPride, and tortious interference with business relations.  Specifically, Hensley Manufacturing alleged that defendants had "misappropriated the Plaintiff's registered trademark by offering for sale products and services utilizing the 'HENSLEY' trademark," such that there was a "strong likelihood of confusion in the marketplace as

---

[1]As the district court noted, there is no proof that Hensley Manufacturing purchased Jim Hensley's business as a going  concern.  The record only reflects that Jim Hensley and Hensley Manufacturing entered into a Licensing Agreement.  In this agreement, Jim Hensley agreed to grant Hensley Manufacturing the exclusive license to "practice, make, have made, market, advertise, use and sell" products made in accordance with two patents owned by him.  In exchange, he received a one-time royalty payment, shares in Hensley Manufacturing,  and a continuing royalty.  Because this is an appeal from the district court's grant of a motion to dismiss, however, we accept all of Hensley Manufacturing's well-pleaded factual allegations as true.

[2]The "Hensley Arrow" design trademark is not at issue in this case.

to the source of origin and sponsorship of the goods." In support of these allegations, the complaint referred to four attached examples of ProPride's promotional and advertising materials.

Two of these attached examples are print advertisements by ProPride. Both advertisements state: "Only one man has ever designed a trailer hitch that effectively eliminates trailer sway before it begins. That man is Jim Hensley. NOW he has done it again and IMPROVED the PERFORMANCE of his old design." Both advertisements provide ProPride's telephone number. One advertisement directs the reader to "www.TrailerSwayControlFacts.com," which is part of ProPride's website, for a free report regarding towing safety. The other advertisement specifically identifies ProPride and provides its website address: "www.ProPrideHitch.com." Both advertisements also contain a disclaimer at the bottom, which states that Jim Hensley is "no longer affiliated with Hensley Mfg., Inc."

In addition to the two print advertisements, an excerpt from ProPride's website was also attached as an exhibit to the complaint. The website includes a link to "The Jim Hensley Hitch Story," which describes Jim Hensley's background, his design contributions to the RV industry, and his relationship to both Hensley Manufacturing and ProPride. The website refers to the 3P hitch as "Jim's new design."

The final attached example of ProPride's alleged trademark infringement is an eBay listing by ProPride entitled "Used Hensley Arrow(R) hitch? Buy NEW Jim Hensley Design." The body of the advertisement, which markets the 3P Hitch, states:

> Jim Hensley designed the original Hensley Arrow(R) towing system and it was the standard for over 13 years.
>
> NOW he has done it again with an updated and improved design for today's travel trailers.
>
> Jim is no longer affiliated with the company that was named after him. He chose ProPride, Inc. as the manufacturer of his new design.

On April 1, 2008, Jim Hensley filed a motion to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which

was quickly followed by a motion to dismiss filed by ProPride and Sean Woodruff. Hensley Manufacturing opposed both motions. It also filed its own motion for a preliminary injunction, seeking to enjoin defendants from using Jim Hensley's name in connection with the sale or advertising of ProPride's products.

The district court granted defendants' motions to dismiss and denied Hensley Manufacturing's motion for a preliminary injunction. It held that "[t]he use of an individual's name in a descriptive sense, as opposed to the use as a trade name is acceptable under" the fair use exception to claims of trademark infringement. *Hensley Mfg., Inc. v. ProPride, Inc.*, No. 08-10425, 2008 WL 2514060, at *4 (E.D. Mich. June 19, 2008). Because Hensley Manufacturing's claims were based upon ProPride's use of Jim Hensley's name in connection with his individual reputation, and not as a trade name, the district court held that the fair use exception applied and it accordingly dismissed the trademark infringement and unfair competition claims. Reasoning that a successful breach of contract action could have only been based upon a valid claim for trademark infringement, the district court also held that Hensley Manufacturing had failed to state a claim for breach of contract against Jim Hensley.[3] Further, having dismissed Hensley Manufacturing's federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state law claims. The district court then denied Hensley Manufacturing's motion for a preliminary injunction, which it found had been rendered moot in light of the ruling on the motions to dismiss. Hensley Manufacturing timely appealed the final judgment of the district court.

## II.  ANALYSIS

### A.  Standard of Review

Whether the district court properly dismissed Hensley Manufacturing's claims pursuant to Rule 12(b)(6) is a question of law, which we review *de novo*. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). We may affirm the district

---

[3]The complaint alleged that Jim Hensley agreed by his conduct over a period of ten years "that the Hensley trademarks would be the sole and exclusive property of Hensley Manufacturing" and that he would not "undertake any action to misappropriate or dilute the Hensley trademark."

court's dismissal of a plaintiff's claims on any grounds, including grounds not relied upon by the district court. *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[4] Rather, to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *id.*, and to "state a claim to relief that is plausible on its face," *id.* at 570; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. And although we must accept all well-pleaded factual allegations in the complaint as true, we need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papsan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Iqbal*, 129 S. Ct. at 1949.

**B. Trademark Infringement Claims**

On appeal, Hensley Manufacturing argues that the district court improperly granted defendants' motions to dismiss because its complaint was sufficient to state a claim for trademark infringement.[5] A trademark is "any word, name, symbol, or device

---

[4]The Supreme Court has recently clarified that its decision in *Twombly* "expounded the pleading standard for 'all civil actions,'" despite the fact that *Twombly* itself arose in the context of an antitrust suit. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009). The Court's decision in *Iqbal* made clear that the *Twombly* standard is not limited to "sprawling, costly, and hugely time-consuming" litigation, *Twombly*, 550 U.S. at 560 n.6, dispelling such speculation by courts both within and outside this circuit. *See, e.g.*, *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 502 n.6 (6th Cir. 2008); *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 296 n.1 (6th Cir. 2008); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 n.4 (6th Cir. 2007); *Iqbal v. Hasty*, 490 F.3d 143, 155-58 (2d Cir. 2007), *rev'd*, *Iqbal*, 129 S. Ct. at 1954.

[5]Although Hensley Manufacturing only asserts a claim of error with respect to its federal trademark infringement claim, we assume that this argument also refers to Hensley Manufacturing's claim of unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and its claim for common law trademark infringement, which both employ the same "likelihood of confusion" test as a claim for trademark

. . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion. *Id.* § 1114(1). Only the third requirement—likelihood of confusion—is at issue in this case.

### 1. Likelihood of Confusion

"The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). In determining whether a likelihood of confusion exists, a court will typically weigh the following eight factors: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.*; *see also Interactive Prods. Corp. v. A2Z Mobile Office Solutions, Inc.*, 326 F.3d 687, 694 (6th Cir. 2003). But the likelihood of confusion analysis also involves a preliminary question: whether the defendants "are using the challenged mark in a way that identifies the source of their goods." *Interactive Prods.*, 326 F.3d at 695. If they are not, then the mark is being used in a "'non-trademark' way" and trademark infringement laws, along with the eight-factor analysis, do not even apply. *Id.* In *Interactive Products*, for example, this court concluded that the appearance of the plaintiff's trademark in the post-domain path of the defendant's website would not cause consumer confusion regarding the source of the website or the products on it. *Id.* at 698. Because there was no likelihood of confusion as to the source of the products, it was "unnecessary for the

---

infringement. *See Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006); *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 521 (6th Cir. 2007).

district court to examine the eight factors traditionally used to determine likelihood of confusion between two source-signifying marks." *Id.*

The Second Circuit has applied essentially the same logic in a case, like this one, involving an individual's use of his personal name. In *Madrigal Audio Laboratories v. Cello, Ltd.*, 799 F.2d 814, 816 (2d Cir. 1986), the defendant, Mark Levinson, granted Mark Levinson Audio Systems, Inc., ("MLAS") the right to use "Mark Levinson" as a trade name. Levinson eventually left MLAS and founded another company, Cello, Ltd. ("Cello"). *Id.* at 817. Cello issued a promotional brochure entitled "Cello by Mark Levinson," which contained a one-page "Note from Mark Levinson" and several photographs of Levinson. *Id.* Madrigal Audio Laboratories, Inc. ("Madrigal") acquired the trademark and trade name rights of MLAS in bankruptcy and subsequently sued Levinson and Cello for trademark and trade name infringement. *Id.* The Second Circuit held that "[w]hen an individual sells no more than the right to use his name as a trade name or trademark," he is not precluded "from taking advantage of his individual reputation (as opposed to the reputation of the company which bore his personal name as a trade name) by establishing a company which competes against the purchaser of the trade name" or "from advertising, in a not overly intrusive manner, that he is affiliated with a new company." *Id.* at 823. He is only prohibited from "using his name in such a way as to mislead the public into believing that those products are produced by the company which purchased the trade name." *Id.* Because the use of Mark Levinson's name in Cello's materials was not likely to confuse consumers regarding the origin of Cello's products, the Second Circuit reversed the district court's order barring Levinson and Cello from advertising Levinson's relationship to Cello. *Id.* at 824.

Here, the complaint does not allege facts sufficient to show that ProPride's use of the "Hensley" name creates a likelihood of confusion as to the source of its products. Hensley Manufacturing does not claim that ProPride has marked its trailer hitch products with the trademarks "Hensley," "Hensley Arrow," or even "Jim Hensley." The name of ProPride's product, the "Pivot Point Projection Hitch" or "3P Hitch," is not even remotely similar to the "Hensley" trademark. Instead, the complaint challenges

ProPride's use of Jim Hensley's name in connection with its advertising of the 3P Hitch. Although Hensley Manufacturing alleges that this creates "a strong likelihood of confusion in the marketplace as to the source of origin and sponsorship of the goods of the Plaintiff and the Defendant," such a conclusory and "formulaic recitation" of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1954 ("Rule 8 does not empower respondent to plead the bare elements of his cause of action . . . and expect his complaint to survive a motion to dismiss."). The exhibits attached to the complaint also indicate that Jim Hensley's name does not signify the source of ProPride's products. The two attached print advertisements identify Jim Hensley as the designer of the new 3P Hitch, as well as an earlier hitch that is not named. Each print advertisement states (albeit in smaller, but still noticeable, font) that Jim Hensley is "no longer affiliated with Hensley Mfg., Inc." Moreover, one of the print advertisements clearly identifies ProPride as the source of the advertised product by providing the domain name for ProPride's website: "www.ProPrideHitch.com." Another exhibit, the printout of ProPride's website, also clearly identifies ProPride as the source of the 3P Hitch. The website refers readers to "The Jim Hensley Hitch Story" for "the facts about a man who has made an enormous contribution to RVers and the RV industry," but ProPride's name appears on the page over ten times; there is absolutely no confusion as to the source of the product being advertised. Finally, ProPride's eBay advertisement encourages buyers to "Buy NEW Jim Hensley Design," but it also states that "Jim is no longer affiliated with the company that was named after him. He chose ProPride, Inc. as the manufacturer of his new design." This advertisement clearly identifies ProPride as the seller of the 3P hitch.

Ultimately, the exhibits attached to the complaint describe Jim Hensley's association with ProPride, his design of the ProPride 3P Hitch, and his former association with Hensley Manufacturing. They do not identify Hensley Manufacturing, or even "Hensley," as the source of ProPride's products or suggest any current association between Hensley Manufacturing and Jim Hensley or ProPride. In fact, the advertisements make clear that Jim Hensley is no longer associated with Hensley Manufacturing. Moreover, they always refer to "Jim Hensley" and never simply use the

word "Hensley" in connection with the 3P Hitch.[6] For all of these reasons, we conclude that they do not create a likelihood of consumer confusion regarding the source of ProPride's products.

### 2. Fair Use Defense

Even if Hensley Manufacturing's complaint somehow cleared the hurdle of showing a likelihood of confusion, however, the affirmative defense of fair use applies to bar the trademark infringement claims. A defendant may raise the affirmative defense of fair use by establishing that:

> the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin.

15 U.S.C. § 1115(b)(4); *see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118-22 (2004); *Audi AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir. 2006). Under the fair use doctrine, "the holder of a trademark *cannot* prevent others from using the word that forms the trademark in its *primary* or *descriptive* sense." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 319 (6th Cir. 2001). Rather,

> [t]he only right of exclusion that trademark law creates in a descriptive word is in the secondary, new, 'trademark' meaning of the word that plaintiff has created. The original, descriptive primary meaning is always available for use by others to describe their goods, in the interest of free competition.

*Id.* (quoting J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 11:45 (4th ed. 1996)); *see also Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70

---

[6] Hensley Manufacturing points out that "The Jim Hensley Hitch Story" on ProPride's website includes a reference to the "Hensley Hitch" without using Jim Hensley's first name. Specifically, the website states: "This was the beginning of the Hensley Hitch concept." Aside from the fact that a printout of that particular portion of the website was not attached as an exhibit to the complaint, "The Jim Hensley Hitch Story" gives a detailed explanation of Jim Hensley's relationship to both Hensley Manufacturing and ProPride and, viewed as a whole, does not create any likelihood of confusion regarding the source of the products on ProPride's website.

F.3d 267, 270 (2d Cir. 1995) ("[F]air use permits others to use a protected mark to describe aspects of their own goods, provided the use is in good faith and not as a mark."). The fair use defense contemplates and tolerates "some possibility of consumer confusion." *KP Permanent*, 543 U.S. at 121.

"In evaluating a defendant's fair use defense, a court must consider whether [the] defendant has used the mark: (1) in its descriptive sense; and (2) in good faith." *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003). In *ETW Corp.*, this court held that an artist's use of Tiger Woods's name on the back of the envelope containing the artist's print and in the narrative description of the print was "purely descriptive," and that there was "nothing to indicate that [it was] used other than in good faith." *Id.* at 920–21. Woods's name, the court noted, was used only to describe the content of the print, and all of the materials accompanying the print clearly identified the artist himself as the source of the print. *Id.* Accordingly, the plaintiff's claim for violation of its trademark "Tiger Woods" was "barred by the fair use defense as a matter of law." *Id.*

At oral argument, counsel for Hensley Manufacturing conceded that the law permitted ProPride to use Jim Hensley's name in a descriptive sense to advertise his association with the company. That is exactly what ProPride did. The company's advertisements do not use the name "Hensley" in the trademark sense; they use Jim Hensley's name only to identify him as a designer of trailer hitches (including the ProPride 3P Hitch), describe his relationship to ProPride, and tell the story behind his success. To the extent they cause some level of consumer confusion, Hensley Manufacturing assumed that risk by trademarking Jim Hensley's own personal last name. *See KP Permanent*, 543 U.S. at 121. Because the complaint and attached exhibits show that ProPride's uses of Jim Hensley's name are descriptive, and because Hensley Manufacturing did not allege facts from which any inference of bad faith can be drawn, we hold that the fair use defense applies in this case as a matter of law.

## C. Procedural Arguments

In its final argument in support of reversal, Hensley Manufacturing challenges the district court's dismissal of its trademark infringement claims in the procedural posture of a motion to dismiss. First, it argues that the district court prematurely granted the motions to dismiss based upon the affirmative defense of fair use. Generally, "dismissal for failure to state a claim upon which relief can be granted is appropriate in only the most extreme trademark infringement cases, such as where goods are unrelated as a matter of law, since the likelihood of confusion is generally a question of fact." 32 *Federal Procedure, Lawyer's Edition* §74:507 (2008). But there is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law. *See In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003) (holding that a suit can be dismissed on the basis of an affirmative defense if the facts establishing the defense are "definitively ascertainable from the allegations of the complaint" and they "conclusively establish the affirmative defense"); *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (noting that if a plaintiff "pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court"). Here, the facts Hensley Manufacturing alleged in its complaint, as well as the attached exhibits, demonstrated that there was no likelihood of confusion and that the fair use defense conclusively applied as a matter of law. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1467 (9th Cir. 1993) (affirming district court's grant of motion to dismiss trademark infringement claim because defendant's use was fair use as a matter of law). Hensley Manufacturing contends that "facts *may exist* that establish a level of consumer confusion" and that "facts *may exist* that establish that 'Hensley' is not being used fairly and in good faith." Appellant's Br. at 13 (emphasis added). But mere speculation is insufficient; it was Hensley Manufacturing's burden to allege those facts, if they indeed exist, in the first instance. Simply put, Hensley Manufacturing failed to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 129 S. Ct. at 1949 (noting that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

Second, Hensley Manufacturing argues that the district court improperly considered facts that were outside the complaint without giving it adequate notice and a reasonable opportunity to respond. When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). If the district court does consider evidence outside the complaint, "it effectively converts the motion to dismiss to a motion for summary judgment." *Id.*; *see also Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001). It then must give the parties "a reasonable opportunity to present all the material that is pertinent to the [summary judgment] motion." FED. R. CIV. P. 12(d).

Hensley Manufacturing offers only one example in support of its argument that the district court considered matters outside the complaint: the district court's discussion of ProPride's use of a domain name, "jimhensleyhitch.com," which redirects users to ProPride's website.[7] Indeed, we are unable to find any indication of this domain name in the complaint or the exhibits attached to the complaint. Evidence of ProPride's ownership of the domain name appeared first in Hensley Manufacturing's motion for a preliminary injunction. Even assuming that the district court's consideration of this domain name was sufficient to convert the motions to dismiss into motions for summary judgment, however, Hensley Manufacturing cannot demonstrate that it was prejudiced by the district court's failure to notify it of the conversion. "[A] party cannot raise for the first time on appeal an argument that [it] was surprised by the conversion of the motion to dismiss into a motion for summary judgment when the party was aware that materials outside the pleading had been submitted to the court before the court granted the motion." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993). That is especially true in this case, where Hensley Manufacturing itself submitted evidence of the "jimhensleyhitch.com" domain name to the court. It cannot now complain that the district court considered what it had asked the court to consider. And even if the

---

[7]The exhibits attached to the complaint are considered part of the complaint for purposes of a motion to dismiss. *See* FED. R. CIV. P. 10(c).

summary judgment standard of review applies to the district court's dismissal of the complaint, the trademark infringement claims still fail as a matter of law.[8]

## D.  Remaining Claims

After dismissing the trademark infringement claims, the district court did not err in dismissing Hensley Manufacturing's remaining claims.  First, the district court concluded that a successful breach of contract claim would require a successful trademark infringement claim.  Hensley Manufacturing does not challenge that conclusion on appeal.  The breach of contract claim, then, fell along with the trademark infringement claims.  And, having dismissed all of the federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the remaining state law claims.  *See Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008).  It also did not err in denying Hensley Manufacturing's motion for a preliminary injunction, which was rendered moot in light of the court's dismissal of the complaint.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.

---

[8]As the district court noted, the "jimhensleyhitch.com" domain name consists of Jim Hensley's entire name.  This descriptive use distinguishes the domain name from Hensley Manufacturing and does not create a likelihood of confusion as to the source of the website or its products.