CLAY, Circuit Judge,
concurring in the judgment.
While I join the lead opinion in the conclusion that the district court did not err in dismissing Gardner’s claim under Rule 12(b)(6), I write separately both to clarify the issue of whether Gardner’s Federal Tort claim is barred by the doctrine of collateral estoppel, and because I believe that the better path to resolving the issues presented in this case would be to find that Gardner has failed to plead a sufficient factual basis to make a plausible showing of each element of his claims of failure to warn and psychiatric malpractice under Tennessee law.[1]
I. Collateral Estoppel
A. Legal Framework
A party to litigation is collaterally es-topped from raising an issue when:
(1) the issue in the subsequent litigation is identical to that resolved in [an] earlier litigation,
(2) the issue was actually litigated and decided in the prior action,
(3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation,
(4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and
(5) the party to be estopped had a full and fair opportunity to litigate the issue.
Wolfe v. Perry, 412 F.3d 707, 716 (6th Cir.2005).
In addition to the considerations outlined above, “[i]n determining whether the defensive use of collateral estoppel is appropriate, the court must also consider whether ... it would be otherwise unfair under the circumstances to permit the use of collateral estoppel.” Cobbins v. Tennessee Dept. of Transp., 566 F.3d 582, 590 (6th Cir.2009).
We have held that collateral estoppel can be applied when the prior suit is criminal and the subsequent suit civil, as long as the issues presented are identical. See United States v. Beaty, 245 F.3d 617, 624 (6th Cir.2001) (“No rule of law precludes a prior criminal conviction from having pre-clusive effect in a subsequent civil proceed *80 ing between the government and the defendant.”); see also Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 568, 71 S.Ct. 408, 95 L.Ed. 534 (1951) (“It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding.”)
B. Elements of Plaintiffs Criminal Conviction and Civil Suit
Gardner was convicted, by way of guilty plea, of one count of forcibly assaulting and intimidating an employee of the United States, in violation of 18 U.S.C. § 111. The statutory elements of assaulting a federal employee are as follows:
(a) In general. — Whoever—
(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties;
shall ... where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.
(b) Enhanced penalty. — Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.
18 U.S.C. § 111.
Therefore, “Section 111(a)(1) contains four distinct elements; the government must show that the defendant: (1) forcibly (2) assaulted, resisted, opposed, impeded, intimidated, or interfered with (3) a federal officer (4) in the performance of his duties.” United States v. Kimes, 246 F.3d 800, 807 (6th Cir.2001). “The element of force necessary for a conviction under this statute may be shown by ‘such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death.’ ” United States v. Chambers, 195 F.3d 274, 277 (6th Cir.1999) (quoting United States v. Street, 66 F.3d 969, 977 (8th Cir.1995)).
We have held that assaulting a federal officer, as defined in 18 U.S.C. § 111, is a general intent crime. See Kimes, 246 F.3d at 808. “Even to show general intent, however, ‘the Government must prove beyond a reasonable doubt that the defendant knowingly, consciously, and voluntarily committed an act which the law makes a crime.’ ” Id. at 807 (quoting United States v. Kleinbart, 27 F.3d 586, 592 (D.C.Cir.1994)).
Because Gardner brought his civil suit under the Federal Tort Claims Act, this Court looks to the substantive law of the state where the alleged claim arose to determine the standard for liability. See Premo v. United States, 599 F.3d 540, 545 (6th Cir.2010). Tennessee has both a statutory tort of failure to warn by a mental health professional, and a common law tort of psychiatric medical malpractice. Under the statutory tort,
IF AND ONLY IF
(1) a service recipient has communicated to a qualified mental health professional or behavior analyst an actual threat of bodily harm against a clearly identified victim, AND
(2) the professional, using the reasonable skill, knowledge, and care ordinarily possessed and exercised by the professional’s specialty under similar circumstances, has determined or reasonably should have determined that the service recipient has the apparent *81 ability to commit such an act and is likely to carry out the threat unless prevented from doing so,
THEN
(3) the professional shall take reasonable care to predict, warn of, or take precautions to protect the identified victim from the service recipient’s violent behavior.
TenmCode Ann. § 38-3-206 (West 2010).
Tennessee also has a common law tort of psychiatric negligence or psychiatric medical malpractice. In order to present a prima facie case of psychiatric negligence, the plaintiff must show “[1] a duty of care owed by the defendant to the plaintiff; [2] conduct falling below the applicable standard of care that amounts to a breach of that duty; [3] an injury or loss; [4] cause in fact; and [5] proximate cause.” McClung v. Delta Square Ltd. P’ship, 937 S.W.2d 891, 894 (Tenn.1996).
“The existence or nonexistence of a duty owed to the plaintiff by the defendant is a question of law to be determined by the court.” Burroughs v. Magee, 118 S.W.3d 323, 327 (Tenn.2003) (citing Staples v. CBL & Associates, Inc., 15 S.W.3d 83, 89 (Tenn.2000)). In addition to determining whether a defendant “stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger,” Turner v. Jordan, 957 S.W.2d 815, 818 (Tenn.1997), “considerations of public policy are also crucial in determining the existence of ... legal duty.” Bain v. Wells, 936 S.W.2d 618, 625 (Tenn.1997).
A showing of proximate cause and cause in fact require the following:
Cause in fact refers to the cause and effect relationship between the defendant’s tortious conduct and the plaintiffs injury or loss. Thus, cause in fact deals with the “but for” consequences of an act.... In contrast, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. Proximate or legal cause is a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on considerations of logic, common sense, policy, precedent and our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient.
Snyder v. LTG Lufttechnische GmbH, 955 S.W.2d 252, 256 n. 6 (Tenn.1997) (internal quotations omitted). Therefore, in order to prove the fourth element of the medical malpractice tort, a plaintiff must show that a defendant was the “but for” cause of the injury claimed, though under Tennessee law the plaintiff need not show that the defendant was the sole cause of the injury. See White v. Lawrence, 975 S.W.2d 525, 529 (Tenn.1998); Smith v. Pfizer Inc., 688 F.Supp.2d 735, 747 (M.D.Tenn.2010). In order to demonstrate proximate cause, the plaintiff must show legal causation.
C. Analysis
It is clear, upon analysis, that the issues presented in Gardner’s criminal conviction and his civil litigation are not identical. Accordingly, collateral estoppel does not bar his current claim, and the district court erred in concluding otherwise.
In determining that Gardner was collaterally estopped from pursuing his medical malpractice suit, the district court found that Gardner,
admitted his intent to commit the assaults for which he was sentenced.... Through the plea, Plaintiff knowingly waived his right to go to trial to contest his intent and state of mind. The Court believes that Plaintiff had a fair and full opportunity to litigate the issue of his *82 mental state-Because Plaintiff cannot relitigate the question of his intent, he cannot now assert that medical malpractice resulted in a complete mental breakdown — rendering him insane and therefore devoid of intention — at the time of the criminal acts.
(R. 44: Dist. Ct. Op. at 5.)
Though neither the district court nor the government make the point explicitly, the district court’s collateral estoppel ruling is necessarily premised on the idea that the criminal adjudication of Gardner’s “general intent” to commit assault is an issue that is identical to the “cause in fact” element of the Tennessee common law psychiatric malpractice tort. The district court’s opinion also relies on its understanding that Gardner would be required to prove that he was criminally insane at the time of his crime, or at least that he did not “knowingly, consciously, and voluntarily” commit the crime, in order to present a prima facie case of psychiatric malpractice.
Under a pure statutory reading, the offense of assault on a federal officer and the tort of psychiatric medical malpractice do not share common elements. On the contrary, neither the statutory nor common law torts of medical negligence/malpractice require a showing of the patient’s diminished capacity or intent. Nor does a finding that a patient intended to commit the harm for which he brings suit preclude the finding of “but for” causation.
Under Tennessee law, a patient or a third party may sustain a claim for psychiatric malpractice, under the statute or common law, even when the patient commits an intentional intervening act. See White, 975 S.W.2d at 580-31 (in psychiatric negligence case of patient who committed suicide, holding that “[t]he fact that the deceased was not insane or bereft of reason” did not preclude tort claim, and that a psychiatrist’s liability “may not be reduced by comparing his negligent conduct with the decedent’s intentional act of committing suicide since the intentional act was a foreseeable risk created by the defendant’s negligence”). Therefore, a criminal finding that Gardner committed an intentional crime, or that he was not insane, does not preclude a claim of psychiatric malpractice under Tennessee law.
A finding that a patient intentionally committed an intervening act also does not preclude a finding of proximate causation in this situation, because under Tennessee law “[a]n intervening act, which is a normal response created by negligence, is not a superseding, intervening cause so as to relieve the original wrongdoer of liability, provided the intervening act could have reasonably been foreseen and the conduct was a substantial factor in bringing about the harm.” McClenahan v. Cooley, 806 S.W.2d 767, 775 (Tenn.1991), but see White, 975 S.W.2d at 580 (stating that an intentional act “may constitute an intervening cause if it is a willful, calculated, and deliberate act of one who has the power of choice,” but reserving determination for a jury).
For these reasons, even if the government can show that Gardner actually litigated the issue of his volition, sanity, or intent in the criminal case, the resolution of that issue is not implicated in Gardner’s civil claims of medical negligence. Because a finding of general intent to commit a criminal act does not preclude a finding of psychiatric negligence under Tennessee law, the issues decided in Gardner’s criminal case are not identical to those raised in his civil suit, and the doctrine of collateral estoppel cannot be properly applied.
II. Failure to State a Claim
A. Pleading Requirements
We review a district court’s dismissal under Fed.R.Civ.P. 12(b)(6) de novo, “pur *83 suant to the same standards that should have been applied in the district court.” Fritz v. Charter Tp. of Comstock, 592 F.3d 718, 722 (6th Cir.2010). “For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.” JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir.2007) (internal citations and quotation marks omitted).
Because Gardner brought his claim under the Federal Tort Claims Act, 28 U.S.C. § 2674, his pleadings are governed by Federal Rule of Civil Procedure 8, which requires Gardner’s complaint to contain “a short and plain statement of the claim showing that the pleader is entitled to relief.” Fed.R.Civ.P. 8(a)(2).
“While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.” Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations and quotations omitted). Instead, “a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.” Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotations omitted).
B. Analysis
In his complaint, Gardner alleged that Department of Veterans Affairs employee, pharmacist Vicki Bianchi, negligently treated Gardner by,
failing to timely diagnose, manage and treat Michael Gardner for his depression and mental instability, which resulted in pain and suffering, emotional distress, permanent impairment, suicidal thoughts, impaired memory, a major depressive disorder, acute stress disorder and disassociative amnesia. As a direct and proximate result of the above negligent acts, negligent omissions, negligent medical treatment and/or medical malpractice by the Defendant’s, agents, employees and/or servants, Plaintiff Michael Gardner suffered a complete mental breakdown causing him to be charged with aggravated assault and sentenced to federal incarceration for eight (8) years.
Plaintiff Michael Gardner’s impaired mental condition was the proximate result of the negligence of the United States, through its employee(s) in failing to treat him for his emotional and mental disorders in accordance with the recognized standards of professional practice.
(R. 37: Am. Compl. at 2-3.)
As outlined above, the statutory tort for failure to warn requires a showing that (1) the patient communicated an actual threat against an identifiable victim, (2) the mental health professional reasonably determined, or should have determined, that the patient could, and likely would, carry out the threat absent intervention, and (3) the mental health professional did not take reasonable care to predict, warn of, or take precautions to protect the victim. See TenmCode Ann. § 33-3-206 (West 2010). The claim further requires that the defendant be a “qualified mental health professional,” which is limited by statute to a psychiatrist, physician with expertise in psychiatry, psychologist, psychological examiner, social worker with mental health experience, psychiatric nurse, or profes *84 sional therapist or counselor. See Tenn. Code Ann. § 33-1-101(20) (West 2010).
Gardner does not allege any of the elements of a failure to warn claim. He does not claim that he ever made a threat in the presence of a mental health professional, that the professional ever assessed (or failed to assess) the threat for plausibility, or that the professional failed to take reasonable care to protect the victim, which in this case, Gardner claims was himself. Furthermore, Gardner brings his claim against a phai'macist, Vicki Bianchi. In doing so, he fails to plead that, or in what manner, Bianchi qualifies as a mental health professional under the statute, or how a pharmacist could fail (or succeed) in “providing medical and psychiatric care,” (R. 37: Am. Compl. at 2), having never been required to obtain a medical degree or medical license.
Gardner has also failed to provide a plausible pleading regarding the common law psychiatric negligence tort. As above, the tort requires a showing of “[1] a duty of care owed by the defendant to the plaintiff; [2] conduct falling below the applicable standard of care that amounts to a breach of that duty; [3] an injury or loss; [4] cause in fact; and [5] proximate cause.” McClung, 937 S.W.2d at 894.
Gardner has not pled that a duty of care to prevent his crime was owed to him by the pharmacist at the VA hospital, or that the care provided by the pharmacist fell below the level required by that duty. See Bradshaw v. Daniel, 854 S.W.2d 865, 871 (Tenn.1993) (describing limitations on duty by stating that an actor “is under the affirmative duty to act to prevent another from sustaining harm only when certain socially recognized relations exist which constitute the basis for such legal duty”) (quoting Harper & Kime, The Duty to Control the Conduct of Another, 43 Yale L.J. 886, 887 (1934)). mile Gardner has pled an injury — “federal incarceration for eight (8) years ... pain, suffering, mental anguish, loss of enjoyment of life, loss of earning capacity, and loss of liberty,” (R. 37: Am. Compl. at 2-3) — he has failed to plead facts sufficient to show that Defendants were either the actual or proximate cause of that injury.
Gardner does make the conclusory statement that his criminal actions were “a direct and proximate result of the above negligent acts, negligent omissions, negligent medical treatment and/or medical malpractice by the Defendant’s,” (Id. at 2), but pleads no facts to support this conclusion. Gardner does not plead, for instance, facts that constitute the acts, omissions, or negligent medical treatment that he alleges. Nor does he plead facts to support the claim that his “mental breakdown,” as he describes it, post-dated the alleged negligence or would have been cured or contained by proper pharmaceutical treatment. “While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.” Iqbal, 129 S.Ct. at 1950. In this case, Gardner provides no such factual allegations.
Though Gardner pleads proximate cause, stating that his “impaired mental condition was the proximate result of the negligence of the United States, through its employee(s) in failing to treat him for his emotional and mental disorders in accordance with the recognized standards of professional practice,” (R. 37: Am. Compl. at 3), Gardner also fails to show plausibility on this element. “As [Tennessee state] cases dealing with proximate or legal causation have indicated, the crucial inquiry is whether the defendant’s negligent conduct led to or made [the injury or harm] reasonably foreseeable.” White, 975 S.W.2d at 530. In addition to the foregoing reasons, because Gardner has not pleaded *85 that his actions and the harms claimed— shooting co-workers in his workplace, pleading guilty to the crime, and being incarcerated — should have been reasonably foreseeable to his pharmacist based on her actions, he falls short in pleading this element of the tort.
On the whole, the basis of Gardner’s tort claim it is startlingly unclear.[2] And while “the pleading standard Rule 8 announces does not require detailed factual allegations ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.” Iqbal, 129 S.Ct. at 1949 (internal quotations omitted). Gardner has not met this standard in his pleading, and I believe that we should affirm the decision of the district court on this basis.

. Though the insufficiency of Gardner’s pleadings was not the district court’s primary basis for dismissal under Rule 12(b)(6), this Court "may affirm the district court’s dismissal of a plaintiff's claims on any grounds, including grounds not relied upon by the district court.” Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir.2009).

. Though it is noted that Gardner appears to have filed an administrative claim with the Department of Veteran's Affairs, he neglected to append that claim, or any exhibits included therein, to this complaint before the district court. (R. 37-1.) Therefore, we have only his pleadings to consider in reaching a determination.