NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 16a0320n.06

Case No. 15-6352

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 10, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BILL M. CHAPMAN; LISA M. CHAPMAN, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| JPMORGAN CHASE BANK, N.A.; | ) | TENNESSEE |
| SPECIALIZED LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: MOORE, SUTTON, and DONALD, Circuit Judges.

SUTTON, Circuit Judge. Bill and Lisa Chapman claim that their creditors failed to make certain disclosures in the course of lending them money to buy a house, precluding the creditors from later foreclosing on the property when the Chapmans failed to make the requisite loan payments. The district court dismissed their complaint, and we affirm.

The Chapmans obtained a "refinance loan" from Regions Bank in 2006, secured by their home in Brentwood, Tennessee. R. 14 at 2. They defaulted, and in 2012 they sued JPMorgan Chase Bank, along with several other entities that had past or present interests in the loan, in an effort to prevent foreclosure. *See Chapman v. JP Morgan Chase Bank*, 621 F. App'x 307, 307–08 (6th Cir. 2015) (per curiam). The Chapmans alleged that the defendants violated the deed of trust and the Fair Debt Collection Practices Act in enforcing the loan agreement. They also

claimed that the defendants illegitimately transferred the deed of trust, making it impossible to identify "the true holder of the [p]romissory [n]ote." R. 19-1 at 6. That meant that *none* of the defendants had authority to foreclose on the home, and the Chapmans sought declaratory, injunctive, and quiet-title relief to that effect. The district court granted summary judgment to the defendants on all of the Chapmans' claims, and we affirmed. *Chapman v. JP Morgan Chase Bank*, No. 3-12-0623, 2013 WL 5375284, at *2–3 (M.D. Tenn. Sept. 25, 2013); *see Chapman*, 621 F. App'x at 308.

After our decision, the Chapmans wrote a letter to JPMorgan and several other entities, asserting their right to rescind the loan. *See* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23. They did so on the ground that, at the time of closing, Regions Bank held itself out as the lender even though another entity funded the loan. They also alleged that Regions failed to make disclosures required by federal law. Despite the Chapmans' effort to rescind the loan, JPMorgan foreclosed on the property in June 2015.

Today's case concerns a second lawsuit by the Chapmans, this one against JPMorgan and Specialized Loan Servicing (the latter of which serviced the loan), and it is premised on the Chapmans' efforts to rescind the loan. The first count seeks damages based on the defendants' failure to provide them, at the time of closing, with notice of their right to rescind. *See* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b). The remaining counts seek to enforce their rescission right and to void the foreclosure. The district court dismissed their complaint on claim preclusion grounds, *Chapman v. J.P. Morgan Chase Bank, N.A.*, No. 3:15-cv-693, 2015 WL 7455559, at *3–5 (M.D. Tenn. Nov. 23, 2015), and the Chapmans appealed. Whether the district court properly dismissed the Chapmans' claims is a question of law, which we review afresh. *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 608–09 (6th Cir. 2009).

*Claim Preclusion*.  We agree with the district court that claim preclusion bars the plaintiff's claim for failure to provide notice of the right to rescind the loan.  Claim preclusion bars a second lawsuit when (1) the first lawsuit ends in "a final judgment on the merits," (2) both suits involve "the same parties or their privies," (3) an issue in the second suit "should have been raised in the first," and (4) both suits "ar[o]se from the same transaction."  *Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015) (quotations omitted).  All four requirements are present here.

*First*, the Chapmans' previous federal lawsuit ended in "a final judgment on the merits"—a grant of summary judgment to the defendants, which we affirmed.  *See Chapman*, 621 F. App'x at 308; *Chapman*, 2013 WL 5375284, at *2–3.

*Second*, the earlier lawsuit and this one involved "the same parties or their privies."  The Chapmans filed both lawsuits, and the two defendants in this lawsuit (or their privies) were involved in the first one.  The Chapmans named JPMorgan Chase Bank a defendant both times, and Specialized Loan Servicing took over servicing duties from either JPMorgan Chase Bank or Chase Home Finance, LLC, both of which were defendants in the prior lawsuit.  *See Chapman*, 2013 WL 5375284, at *1 n.1, *2.  That means Specialized Loan Servicing is the successor in interest to a defendant in the earlier action, which means it is in privity with that defendant for claim preclusion purposes.  *See Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 481 (6th Cir. 1992).

*Third*, the Chapmans could have, and "should have," brought their claims for failure to provide notice in their earlier lawsuit.  The alleged statutory violation occurred in 2006, long before the Chapmans brought their 2012 lawsuit.  Nothing prevented the Chapmans from incorporating their lack-of-notice claims in the previous complaint.  Likewise, the district court,

which already investigated the circumstances that gave rise to the loan agreement, readily could have resolved allegations about the disclosure obligations that arose during the formation of that agreement. *See Chapman*, 2013 WL 5375284, at *2.

*Fourth*, both lawsuits "ar[o]se from the same transaction"—the loan agreement between the Chapmans and Regions Bank. The Chapmans' first complaint alleged that the defendants violated the deed of trust executed as part of this agreement and sought to prevent the enforcement of any contractual rights under the loan agreement. Their current complaint alleges that the defendants failed to comply with statutory notice requirements, which come into play whenever a creditor participates "[i]n a transaction subject to rescission." 12 C.F.R. § 226.23(b)(1); *see* 15 U.S.C. § 1635(a). The transaction that gave rise to the disclosure requirements at issue here is the same transaction whose validity was challenged in the first complaint. *See R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 181–85 (1st Cir. 2006) (applying Puerto Rico claim preclusion law); *cf. Albano v. Norwest Fin. Haw., Inc.*, 244 F.3d 1061, 1064 (9th Cir. 2001) (applying Hawaii claim preclusion law). Yes, it is true, actions to enforce a debt are not "logically related" to lack-of-disclosure claims, meaning the former are not compulsory counterclaims in a lawsuit involving the latter. *See Maddox v. Ky. Fin. Co.*, 736 F.2d 380, 382–84 (6th Cir. 1984). But the Chapmans' previous lawsuit was not an action to enforce a debt; it alleged breach of the deed of trust and violations of the Fair Debt Collection Practices Act, and it directly attacked the validity of the loan agreement at issue in today's case. That sort of factual and transactional overlap, lacking in *Maddox*, justifies invoking claim preclusion to bar the Chapmans' claims. 736 F.2d at 383; *see also Sanders*, 973 F.2d at 484–85.

The Chapmans resist this conclusion in three ways. They note that JPMorgan "was named in a different capacity" in the earlier lawsuit, eliminating the possibility that the same

parties (or their privies) appeared in both actions. Appellants' Br. 30. "The rule of differing capacities," we realize, "generally operates to allow a subsequent individual capacity suit against a governmental official even where a prior suit alleged an official capacity claim against the same official." *Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003). But that doctrine has no relevance here. JPMorgan is not "a government[] official," and the Chapmans, perhaps more importantly, offer no explanation of how they sued the corporation in two meaningfully different "capacities." *Id.*

The Chapmans add that they could not have brought their lack-of-notice claims in the first lawsuit, because they did not know "the name of the true lender" until 2015. Appellants' Br. 31. Their theory is that, although Regions Bank falsely held itself out as the creditor at the time of closing, another entity was funding the loan and the Chapmans could not bring a lawsuit until they knew that entity's identity. That is incorrect. The Chapmans knew enough at the time of their first complaint to bring claims against JPMorgan, along with Specialized Loan Servicing's predecessor in interest, and they knew about the factual basis of any statutory violations, which occurred in 2006. That is all they needed to know to raise their failure-to-disclose claim against these defendants and their privies. Any alleged confusion about the "true" creditor thus was self-imposed and thus carries no weight.

The Chapmans next contend that claim preclusion will result in injustice because it will prevent them from vindicating their statutory right to receive full disclosure about this credit transaction. But *every* application of claim preclusion (or any other procedural bar for that matter) prevents claimants from vindicating their rights, and the Chapmans do not identify any particular injustice that will befall them if we invoke "accepted principles of res judicata." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981).

5

*Timeliness*. The district court held that claim preclusion disposed of the Chapmans' other claims as well, but we take a different path in rejecting these claims. The Chapmans' remaining causes of action all rest on a single allegation—that they rescinded the loan, which, they say, means that JPMorgan and Specialized Loan Servicing had no authority to foreclose on their home.

Any potential "[r]ight of rescission" comes from the Truth in Lending Act's buyer's remorse provision. 15 U.S.C. § 1635; *see* 12 C.F.R. § 226.23. It says that borrowers "shall have the right to rescind [certain consumer credit] transaction[s] until midnight of the third business day following the consummation of the transaction or the delivery of [various required disclosures], whichever is later." 15 U.S.C. § 1635(a); *see* 12 C.F.R. § 226.23(a)(3); *see also Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 877–79 (6th Cir. 2006). Even if the creditor never delivers the necessary disclosures, the rescission right "expire[s] three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f); *see* 12 C.F.R. § 226.23(a)(3). This provision goes beyond the standard statute of limitations, extinguishing not only the plaintiffs' ability to bring a lawsuit but also their "underlying right" to rescind the transaction. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417 (1998).

The three-year time limit governs the Chapmans' claims. They allege that the creditors never made some of the necessary disclosures. And the Chapmans consummated their loan agreement with Regions Bank in 2006, which means their right to rescind expired in 2009, well before they tried to exercise it in 2015. Absent a valid rescission, the Chapmans' challenge to this foreclosure and the remaining claims in their complaint necessarily fail.

Acknowledging that their right to rescind the underlying transaction expired several years ago, they claim that the relevant transaction—the loan agreement—was not "consummat[ed]" until 2015, when they became aware of their "true" creditor's identity. Appellants' Br. 23, 25. "'[C]onsummation,'" however, "occurs when a borrower signs the loan documents and becomes obligated to pay," *United States v. Petroff-Kline*, 557 F.3d 285, 296 (6th Cir. 2009), as the federal regulations governing the Truth in Lending Act confirm, *see* 12 C.F.R. § 226.2(a)(13). That happened in 2006, when the Chapmans "sign[ed] the loan documents and bec[a]me[] obligated to pay" back the loaned money (plus interest) to Regions Bank. *Petroff-Kline*, 557 F.3d at 296. Even if some amorphous "true creditor" lurked in the background of this transaction, that did not change the Chapmans' obligations to Regions under the 2006 agreement, which means it did not change the date of that agreement's consummation.

Any other interpretation would flout the Truth in Lending Act's requirement that creditors make the necessary "disclosures before consummation of the transaction." 12 C.F.R. § 226.17(b). Those disclosures are useful only to the extent they give consumers information about the agreement *they are about to sign*, and they would serve little purpose if the creditor did not have to make them until years after loan obligations arose in the first place. The Chapmans confirm the point when they criticize Regions Bank for not making some of the required disclosures in 2006—something the lender would not have been obligated to do until 2015 if the Chapmans' interpretation were correct.

Caselaw, contrary to the Chapmans' argument, does not alter this conclusion. *Jackson v. Grant* held that a loan agreement was not consummated because "[t]he Deed of Trust and the Promissory Note signed by [the plaintiff] le[ft] the name of the beneficiary/lender blank." 890 F.2d 118, 121 (9th Cir. 1989). That meant "[n]o one . . . had agreed to extend credit to [the

plaintiff] as of" the date the documents were signed, so she had no obligation to make payments on the loan. *Id.* Regions Bank by contrast agreed to extend credit to the Chapmans in 2006, creating an obligation to make payments on their loan. *Jackson* has nothing useful to say in this setting.

So too of *Jesinoski v. Countrywide Home Loans, Inc.* 135 S. Ct. 790 (2015). It held that borrowers exercise their right to rescind as soon as they give notice to the creditor, even if they have not yet brought a lawsuit to enforce the rescission. *Id.* at 792. This reasoning does not mean, as the Chapmans claim, that creditors must accept the validity of a rescission as soon as they receive notice of it; creditors still may ask a court not to enforce an invalid rescission, as today's defendants do. Nor does *Jesinoski* exempt borrowers from the statutory requirements for making a valid rescission in the first place. They still must provide the proper form of notice, *see* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.15(a)(2), and they still must exercise their rights within the statutory time frame, *see* 15 U.S.C. § 1635(a), (f); 12 C.F.R. § 226.15(a)(3). Because the Chapmans did not comply with these time limits, we decline to enforce their right to rescind.

The Chapmans insist that the defendants lack "standing" to challenge the rescission. Reply Br. 6–10. But they cannot be referring to standing in the Article III sense, which requires *plaintiffs*, as "[t]he party invoking federal jurisdiction," to show an injury in fact caused by the challenged conduct and redressable through the relief sought. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). They must instead mean that, because they rescinded the transaction, the defendants no longer have any right to assert an interest in the loan. But because the premise of this argument is wrong, as shown, so too is its conclusion. The Chapmans *tried* to rescind the loan, but because their effort was untimely they were not successful. And even if

their rescission had been valid, that would not mean the defendants lacked "standing" to challenge that rescission; it would just mean the defendants' arguments lacked merit.

We recognize that claim preclusion and time limitation arguments are affirmative defenses, and such defenses typically are not invoked at the motion-to-dismiss stage. *Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013). But courts still may grant such a motion "where the undisputed facts conclusively establish an affirmative defense as a matter of law." *Hensley Mfg.*, 579 F.3d at 613. That is today's case. The Chapmans' pleadings, coupled with the records of their earlier lawsuit, "conclusively establish" that claim preclusion bars their failure-to-disclose claim, and their own allegations "conclusively establish" that their attempts to rescind were untimely. *Id.* The defendants briefed these arguments in the district court and on appeal, and the Chapmans have failed to rebut them. The Chapmans at any rate do not protest the district court's decision on this ground.

For these reasons, we affirm.