IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 1, 2022 Session

## BANK OF NEW YORK MELLON V. HELEN E. CHAMBERLAIN

**Appeal from the Circuit Court for Davidson County**
**No. 18C326  Hamilton V. Gayden, Jr., Judge**

_____

**No. M2021-00684-COA-R3-CV**

_____

This appeal arises from a detainer action filed by a bank following a foreclosure sale.  The defendant borrower filed a counterclaim for "Wrongful Foreclosure – Breach of Contract," alleging that the plaintiff bank breached the deed of trust by failing to provide proper notice prior to acceleration.  The trial court originally granted summary judgment in favor of the plaintiff bank, finding that notice was properly sent, but this Court reversed, concluding that genuine issues of material fact existed such that summary judgment could not be awarded to either party.  On remand, the trial court permitted both parties to amend their answers.  The plaintiff bank then asserted res judicata based on a prior lawsuit in federal court and moved for summary judgment on that basis.  The trial court ultimately granted the plaintiff bank summary judgment, concluding that the defendant's argument regarding lack of notice either was raised or should have been raised in her prior action in federal court in which she attempted to halt the foreclosure.  The defendant appeals.  We affirm and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Carol A. Molloy, Fitchburg, Massachusetts, for the appellant, Helen E. Chamberlain.

Alex McFall, Nashville, Tennessee, for the appellee, The Bank of New York Mellon fka The Bank of New York.

## OPINION

### I.   FACTS & PROCEDURAL HISTORY

In 1960, Helen Chamberlain and her husband purchased the property at issue in this case: 514 Neilwood Drive, in Nashville, Tennessee. Ms. Chamberlain became sole owner of the property when she and her husband divorced in 1993. On February 19, 2007, Ms. Chamberlain deeded a one-half interest in the property to Delores-Rose Dauenhauer.[1] Shortly thereafter, on March 30, 2007, Ms. Dauenhauer obtained a loan from America's Wholesale Lender in the amount of $555,000 "to finance the purchase" of the Neilwood Drive property. As evidence of this indebtedness, Ms. Dauenhauer executed an interest only fixed rate promissory note. Her monthly payment would be $3,179.69 for the first 120 months and then rise to $4,261.37. Both Ms. Dauenhauer and Ms. Chamberlain executed a deed of trust on the Neilwood Drive property to secure the repayment of the loan. The deed of trust was eventually assigned to Bank of New York Mellon ("Bank").

Ms. Dauenhauer defaulted on the loan. She passed away in December 2015. However, before her death, Ms. Dauenhauer conveyed her one-half interest in the property to Ms. Chamberlain. The property was sold at a foreclosure sale in September 2017, and Bank was the highest bidder. Bank initiated this detainer action seeking to remove Ms. Chamberlain from the property. The case was transferred from general sessions to circuit court, where Ms. Chamberlain filed a counterclaim for "Wrongful Foreclosure – Breach of Contract," asserting that Bank had breached the notice provisions in the deed of trust. The deed of trust designated both Ms. Dauenhauer and Ms. Chamberlain as "Borrowers." Thus, Ms. Chamberlain relied on paragraph 22, which provided:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. . . .

---

[1] It is not clear from the record what, if any, relationship existed between Ms. Chamberlain and Ms. Dauenhauer. Ms. Dauenhauer's husband signed some documents along with her, but his involvement is not relevant to the issues on appeal.

Ms. Chamberlain argued that she did not receive "proper notice prior to acceleration" under paragraph 22. She sought a declaration that she was the rightful owner of the property; an order compelling Bank to transfer or release legal title and possession of the property; an injunction preventing Bank from transferring, encumbering, or claiming any interest in the property; and "damages and other compensatory relief" the court deemed proper.

Bank filed an answer to the counterclaim, asserting that it provided proper notice of default, acceleration, and the foreclosure in accordance with the deed of trust. It also filed a motion for summary judgment, contending that the counterclaim should be dismissed and that it should be granted possession of the property. Bank claimed that a loan servicer, acting as its agent, had sent notice of default and intent to accelerate the loan in accordance with the deed of trust. Specifically, it pointed to two letters sent by the loan servicer in 2014, with the first being addressed to Ms. Chamberlain and the second being addressed to Ms. Dauenhauer (although Ms. Chamberlain had accepted delivery according to the return receipt). Thus, Bank asserted that it had fully complied with the notice provision of the deed of trust and that it was entitled to summary judgment. It submitted numerous documents in support of its motion, including an affidavit of the custodian of records for the loan servicer with the 2014 notices attached.

Ms. Chamberlain filed a response and cross-motion for summary judgment. She maintained that notice was never provided in accordance with paragraph 22. Ms. Chamberlain attached a letter addressed to Ms. Dauenhauer from a former trustee, dated May 23, 2011, which was entitled, "Notice of Acceleration and Foreclosure." She also submitted an affidavit from her attorney, who stated that she had been the attorney of record for Ms. Chamberlain and Ms. Dauenhauer in a previous case in federal district court and that she had obtained the May 2011 letter from Ms. Dauenhauer during her representation of them during that matter. She referenced "case number 3:12-cv-01026 in the U.S. District Court for the Middle District of Tennessee." Relying on the attached May 2011 letter, Ms. Chamberlain argued that the loan was accelerated on May 23, 2011, and therefore, any notice of acceleration required by paragraph 22 "must have been sent to Defendant prior to May 23, 2011." Thus, she argued that the two 2014 notices produced by Bank were insufficient to show proper notice because they came "three years after acceleration." She also argued that notice to Ms. Dauenhauer did not suffice as notice to her. Ms. Chamberlain submitted her own affidavit stating that she had accepted certified mail addressed to Ms. Dauenhauer on a number of occasions during the course of the foreclosure proceedings but never opened it and instead forwarded it to Ms. Dauenhauer at her home in Washington. She maintained that the failure to comply with paragraph 22 rendered the foreclosure sale void, and therefore, Bank was not entitled to possession.

Bank filed a reply citing paragraph 15 of the deed of trust, which provided:

Notices. . . . Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by

first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.

Thus, Bank argued that notice was deemed given upon mailing. It also argued that the May 2011 letter should not be admissible based on counsel's affidavit referencing a case number of prior litigation without any further foundation. Alternatively, however, Bank argued that even if the May 2011 letter was admitted, the 2014 notices were still valid notice prior to the foreclosure sale, which did not occur until 2017.

On March 11, 2019, the trial court entered an order granting Bank's motion for summary judgment. Regarding Ms. Chamberlain's "breach of contract argument," the trial court found that proper notice of the default prior to acceleration was sent, despite the May 2011 letter, because the foreclosure sale did not occur until September 2017 and Ms. Chamberlain received at least one of the 2014 notices of default, as she signed the certified mail return receipt. The trial court found that the other 2014 letter met the requirements in the deed of trust as well and was also sufficient notice. The court found that both of the 2014 letters set forth amounts to be paid to cure the default prior to acceleration, and therefore, Ms. Chamberlain was given at least two opportunities to cure the default before the foreclosure sale in 2017. Tracking the language of paragraph 15, the trial court noted that notice was deemed given when mailed, the notice address was the property address, and notice to one borrower constituted notice to all borrowers. As for the second issue regarding Bank's claim for possession, the trial court found that it had established constructive possession through the deed of trust and it was undisputed that Ms. Chamberlain was still in possession of the property. As such, it found that Bank was entitled to summary judgment and that Ms. Chamberlain's "breach of contract claim" must be dismissed.

Ms. Chamberlain timely filed a notice of appeal to this Court. On appeal, we recognized that "a defendant may defend against an unlawful detainer action by showing wrongful foreclosure under the deed of trust." *Bank of New York Mellon v. Chamberlain*, No. M2019-00876-COA-R3-CV, 2020 WL 563527, at *5 (Tenn. Ct. App. Feb. 5, 2020). We also noted that "[p]rovisions in a deed of trust directing that notice shall be given in a particular matter are mandatory and must be strictly followed." *Id.* at *6. Ms. Chamberlain argued on appeal that the 2014 notices were insufficient because they were not mailed to the "designated" address as required by the deed of trust. *Id.* Again, Paragraph 15 provided, "The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender." *Id.* at *1. The 2014 notices were both sent to the property address in Nashville. *Id.* at *6. However, Ms. Chamberlain argued that because the May 2011 letter was mailed to Ms. Dauenhauer at her address in Washington, a genuine issue of material fact existed as to whether the Nashville address or

the Seattle address was the "designated notice address" under the deed of trust. *Id.* at *7. This Court noted that the deed of trust allowed a borrower to designate another notice address in writing, but we found that "this argument was not fully considered by the trial court." *Id.* at *9. We concluded that the May 2011 letter constituted sufficient evidence to create a genuine dispute as to the proper address where notices of acceleration may be sent under the deed of trust. *Id.* at *10. As a result, "summary judgment in favor of either party was inappropriate." *Id.* We therefore reversed the order granting Bank's motion for summary judgment and the dismissal of the "counterclaim for breach of contract." *Id.* In a final footnote, we noted that Bank had argued on appeal that if the May 2011 letter was sufficient evidence of a change of address, it should also be sufficient to constitute a notice of acceleration that would itself satisfy paragraph 22 of the deed of trust. *Id.* at *10 n.9. However, we noted that Bank had not argued in the trial court that the May 2011 letter evidenced compliance with paragraph 22, as it relied instead on the 2014 letters. *Id.* We gathered that Bank may not have been in possession of the May 2011 letter until after its motion for summary judgment was filed, but we noted that Bank never amended its motion to rely on the May 2011 letter. *Id.* Accordingly, we said that if Bank wished to make this argument or to submit any other notices as evidence of compliance with the deed of trust on remand, it was free to do so. *Id.*

The first document that appears in the record after remand is a motion by Bank seeking leave to amend its answer to the counterclaim for breach of contract in order to assert affirmative defenses. Bank's original answer had only asserted that proper notice was given, and it sought to add twelve affirmative defenses, including res judicata. Bank suggested that it had requested leave to amend "now that the factual and legal issues are more developed," in addition to the fact that it had retained new counsel on remand. Bank noted that no scheduling order had been entered and no trial date had been set.

Ms. Chamberlain filed a response in opposition to Bank's motion for leave to amend its answer. She noted that the case had already been appealed and remanded over the course of two years. In addition, according to Ms. Chamberlain, this Court had "laid out in detail exactly what [Bank] would need to establish" on remand regarding proper notice. Thus, she suggested that the amendment should not be permitted based on undue delay, undue prejudice, and futility. Bank filed a response, stating that the case had only been pending in the trial court for a few months after its original answer was filed before summary judgment was granted, and the process of discovery had not even begun. Bank also suggested that any delay in the proceedings was not prejudicing Ms. Chamberlain, as she was "living in a half-a-million-dollar Property for free" while Bank was paying all of the expenses.

After a hearing, the trial court entered an order granting Bank's motion for leave to amend its answer. The court noted that leave to amend is to be freely given when justice so requires. It found the proposed amendment timely, as no scheduling order had been entered and no trial date had been set. It also found that Ms. Chamberlain would suffer no

prejudice, as no discovery had taken place. It further noted that Ms. Chamberlain had made an oral motion for leave to amend her own answer to assert additional affirmative defenses, which the trial court granted for the same reasons. Consequently, Ms. Chamberlain also filed an amended answer to include affirmative defenses, including the affirmative defense of wrongful foreclosure for failure to comply with paragraph 22 of the deed of trust.

After Bank was permitted to file its amended answer, Ms. Chamberlain filed a motion to strike its twelve affirmative defenses, arguing that they were "improperly pled" and futile in light of the prior decision of the Court of Appeals that "narrowed the issue" to proper notice. Ms. Chamberlain analyzed each of the twelve affirmative defenses and asserted that each one lacked merit. The trial court granted in part and denied in part Ms. Chamberlain's motion to strike Bank's affirmative defenses. The court granted the motion to strike only to the extent that it addressed the affirmative defense of the statute of frauds. The remainder of the motion to strike was denied.

Ms. Chamberlain filed a motion for summary judgment on the issue of improper notice. She maintained that the note was accelerated on May 23, 2011, and she claimed that she "did not receive notice of default prior to acceleration at any time" from the inception of the loan through the foreclosure sale. She submitted an affidavit stating that she had never received a notice of default "informing [her] of the amount due to cure any alleged default." Thus, Ms. Chamberlain argued that the foreclosure sale was void and the Bank lacked constructive possession of the property.

Bank filed its own motion for summary judgment. It argued that the designated address issue had become moot and unnecessary to resolve because the 2014 notices were sent to the Nashville address and the May 2011 notice was sent to the Washington address, so it did not matter which one was the "designated" address. Bank contended that the loan had been in default since January 2009 and that Bank and its predecessors had been "trying to foreclose" since that time. According to Bank, Ms. Chamberlain and Ms. Dauenhauer had filed a prior lawsuit in 2012, seeking to enjoin a previously scheduled foreclosure sale on the basis that the debt was invalid "under a plethora of legal theories" that were all "soundly rejected" by federal courts. Bank explained that it had moved forward with foreclosure and completed the sale after the federal litigation was resolved and then filed this detainer action seeking to remove Ms. Chamberlain from the property, which led to her filing the counterclaim for breach of contract. Thus, Bank argued that any challenge to the May 2011 notice (or anything earlier) was barred by res judicata. Bank noted that the 2012 complaint had specifically alleged that the plaintiffs had not received proper "notice." Bank also noted that the federal court opinion expressly stated that Ms. Chamberlain and Ms. Dauenhauer had received "at least two letters indicating they were in default," in 2009 and 2011. Bank explained that the district court had dismissed the complaint for failure to state a claim, and the Sixth Circuit had affirmed. Bank acknowledged that Ms. Chamberlain did not assert any claim for "breach of contract" in the federal case but argued that she "should have" if she had any complaints about the

notices that had been provided to date.

Bank attached the 2012 complaint filed by Ms. Chamberlain and Ms. Dauenhauer, which sought to enjoin the scheduled foreclosure sale. Within the factual allegations of the complaint, they alleged that the trustee had "failed to comply with the specific advertisement and/or notice requirements in the deed of trust" and that "Tennessee law requires strict compliance with the terms of the deed of trust in order for any . . . foreclosure, to be valid." The complaint specifically alleged that the trustee had sent them a letter on May 23, 2011, "seeking payment from Plaintiff and indicating that the current principal balance on the loan is $667,243.70." However, the complaint asserted that the May 2011 letter contained false representations. The complaint asserted six counts: complaint to quiet title; fraud; violation of the Fair Debt Collections Practices Act; violation of the Tennessee Consumer Protection Act; civil conspiracy; and slander of title. They sought a declaration that they were the rightful holders of title to the property and that the defendants (including Bank) had no interest in the property; an injunction preventing them from claiming any interest in the property; and compensatory as well as statutory damages.

Ms. Chamberlain filed a response to Bank's motion for summary judgment admitting that the designated address issue was moot. However, she maintained that Bank still had not shown that it provided notice of default prior to the acceleration in May 2011 in compliance with the deed of trust. Ms. Chamberlain admitted virtually all of the undisputed facts submitted by Bank. She admitted that at the time of the actual foreclosure sale in 2017, the loan was due for the January 2009 payment. She admitted that prior foreclosure sales had been scheduled for July 1, 2011, and for October 15, 2012. She admitted to obtaining a temporary restraining order to enjoin the foreclosure sale set for October 15, 2012, although it was later dissolved. She admitted that the federal district court dismissed the complaint in its entirety and "held that [Ms. Dauenhauer] and Ms. Chamberlain received at least two letters indicating they were in default on the Loan." Still, Ms. Chamberlain insisted that the issue in the present lawsuit "is not whether [she] received letters of default but whether the letters of default complied with the requirements set forth in the deed of trust" by giving her "the amount necessary to cure any alleged default." She argued that her 2012 lawsuit concerned the Bank's "right to foreclose based on the note and deed of trust" but that it did not prevent her from raising a breach of contract claim once Bank actually completed the foreclosure in violation of the notice provision in the deed of trust. She argued that her claim was not ripe until the foreclosure was complete. She also suggested that relief could not have been granted in the prior lawsuit because no foreclosure had taken place.

Bank filed a reply, claiming that Ms. Chamberlain's entire case rested on her argument about improper notice of default prior to acceleration on May 23, 2011, when this argument either was or should have been raised in her 2012 lawsuit. For purposes of summary judgment, Bank admitted that the loan was accelerated on May 23, 2011. Thus, Bank noted that the breach of contract of which Ms. Chamberlain complains must have

occurred at least a year before she filed suit to enjoin the foreclosure sale in August 2012. It reiterated that she even attached the May 23, 2011 letter to her complaint and made arguments related to it. Bank also pointed out that the May 23, 2011 letter itself recited the total amount owed on the loan. In a further reply, Ms. Chamberlain acknowledged that the May 2011 letter stated the *total* loan payoff amount, but she clarified her position that she was never provided the amount necessary to cure the loan *prior to acceleration*, representing the amount of past due payments, fees, and costs that must be paid to cure the default. She maintained that she could not have litigated the issue currently before the court in her former lawsuit because the suits were grounded in different conduct and sought different relief.

The trial court held a hearing on both parties' motions for summary judgment and then entered a written order granting summary judgment to Bank. Recounting the history of the litigation, the court noted that a default had occurred as early as 2009 and that foreclosure sales had been set for July 2011 and October 2012, but Ms. Chamberlain and Ms. Dauenhauer filed suit challenging Bank's authority to foreclose and the existence of the default. The court noted that their complaint alleged that they did not receive proper notice. The trial court recited the finding of the district court that the plaintiffs had received at least two letters indicating that they were in default on the loan, including one in 2009 and one on May 23, 2011. It noted that the district court dismissed the complaint for failure to state a claim, and the dismissal was affirmed by the Sixth Circuit, which rejected each challenge to the validity of the loan and Bank's standing to foreclose. The trial court noted that Ms. Chamberlain's only claim (and defense) in this action was for breach of contract, alleging that Bank failed to send notice in accordance with paragraph 22 of the deed of trust. The court noted that Ms. Chamberlain had abandoned her "designated address" argument regarding the 2014 notices on remand and instead argued that notice was not properly sent prior to acceleration in May 2011. However, the trial court concluded that this argument was barred by res judicata. The court applied the elements of res judicata under federal law and found that each was satisfied here. Specifically, it found that a final decision was rendered on the merits by a court of competent jurisdiction; this subsequent action was between the same parties; the issue of improper notice prior to May 2011 either was raised and rejected or should have been raised in the 2012 lawsuit; and there was identity of the causes of action. The trial court found that even though Ms. Chamberlain did not specifically assert a breach of contract claim in the first action, she did assert a broad challenge to the scheduled foreclosure sale and underlying debt, so if she had issues with the notice of acceleration or any alleged breach of the deed of trust, they should have been raised at that time. Therefore, the trial court determined that res judicata barred Ms. Chamberlain's claim and defense based on improper notice.

Next, the court addressed Bank's unlawful detainer action and whether Bank was entitled to possession of the property. It found that the proper avenue to remove occupants of property following a deed of trust foreclosure sale is an unlawful detainer action. It noted that in order to establish an immediate right to possession, the claimant must show

constructive possession and a loss of possession by the occupant's act of unlawful detainer. The court found that where a deed of trust foreclosure sale occurs and the terms of the deed create a landlord-tenant relationship between the foreclosure sale purchaser and the borrower, the purchaser's constructive possession attaches upon passing of title following the sale. Thus, it explained that constructive possession can be established by production of the deed of trust and promissory note bearing the borrower's signature, providing that the borrower has an obligation to make payments, advising that failure to do so will result in default that confers the power of sale on the holder of the note, and stating that the borrower is required to surrender possession immediately upon completion of a foreclosure sale. The court found that Bank "has presented all of that evidence here" and went on to describe the evidence regarding each element. Accordingly, the court found that Bank had established constructive possession and that Ms. Chamberlain was occupying the property.

The trial court noted that wrongful foreclosure can be asserted as a defense in an unlawful detainer action and that Ms. Chamberlain had done so here, asserting that Bank violated the terms of the deed of trust by failing to send notice required by paragraph 22. Accordingly, the court noted that Ms. Chamberlain's wrongful foreclosure defense was "premised entirely on a breach of contract theory." The court concluded, "[b]ecause Ms. Chamberlain's counterclaims and defenses are barred by res judicata, she cannot oppose [Bank's] claim for possession." In any event, the court also noted that Ms. Chamberlain had "conceded that they received notice of default from [Bank] prior to the foreclosure sale in the First Action." The court noted that notices were sent to both the Seattle address in 2011 and the property address in 2014. It also noted that all parties were aware that the loan was in default, that no mortgage payment had been made since December 2008, and that Bank was seeking to foreclose, because those issues were the subject of the first action. In light of "all the evidence that Ms. Chamberlain and [Ms. Dauenhauer] received the requisite notices," the court found that Ms. Chamberlain could not maintain that Bank breached the notice provisions of the deed of trust. For all these reasons, the court concluded that Bank was entitled to judgment as a matter of law on its claim for possession, Ms. Chamberlain's breach of contract claim, and her wrongful foreclosure defense. Ms. Chamberlain timely filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

Ms. Chamberlain presents the following issues, which we have slightly restated, for review on appeal:

1. Whether the trial court abused its discretion by allowing Bank to amend its answer to include affirmative defenses after remand where the Court of Appeals had narrowed the issue to that of notice;

2. Whether the trial court erred in denying Ms. Chamberlain's motion to strike Bank's affirmative defenses;

3. Whether the trial court erred in finding that res judicata applied to bar Ms. Chamberlain's claim/defense of "Wrongful Foreclosure - Breach of Contract";

4. Whether the foreclosure sale is void for failure to provide proper notice of default prior to acceleration as required by paragraph 22 of the deed of trust;

5. Whether Bank is in constructive possession of the property.

In its posture as appellee, Bank responds to each of Ms. Chamberlain's issues and also presents the following additional issues:

1. Whether Ms. Chamberlain's breach of contract claim and wrongful foreclosure defense fail on alternate grounds even if they are not barred by res judicata;

2. Whether Ms. Chamberlain is precluded from challenging the order granting both parties leave to amend their answers to include additional affirmative defenses;

3. Whether Ms. Chamberlain waived arguments raised for the first time in her appellate brief;

4. Whether Ms. Chamberlain waived review of the circuit court's denial of her motion to strike by failing to sufficiently challenge it on appeal.

For the following reasons, we affirm the decision of the circuit court and remand for further proceedings.

### III. DISCUSSION

#### A. Amendment of Answer on Remand

We will begin with Ms. Chamberlain's argument that the trial court erred by permitting Bank to amend its answer on remand to include affirmative defenses. She argues that the trial court "went beyond the mandate of the Court of Appeals" when this Court had "narrowed the issue for the trial court to decide upon remand." We disagree.

"When a remanded cause has been re-entered on the docket, it stands exactly as it did when the appeal was granted, except insofar as changed by the appellate courts." *Hawkins v. Hart*, 86 S.W.3d 522, 532 (Tenn. Ct. App. 2001) (citing *Raht v. Southern Ry. Co.*, 215 Tenn. 485, 387 S.W.2d 781, 787 (1965)). However, "appellate courts have the power to remand cases with limiting instructions to the trial courts." *Melton v. Melton*, No. M2003-01420-COA-R10-CV, 2004 WL 63437, at *5 (Tenn. Ct. App. Jan. 13, 2004).

- 10 -

> The appellate court directs actions and dictates results through its orders, judgments, and mandates and may limit the scope of a remand. Such orders and mandates are controlling, and the lower court does not have the authority to expand the directive or purpose of the higher court imposed upon remand.

*Raleigh Commons, Inc. v. SWH, LLC*, 580 S.W.3d 121, 129-30 (Tenn. Ct. App. 2018) (quotations omitted). Thus, "'the scope of a trial court's authority upon remand' is limited to 'the directions contained in the mandate from the appellate court.'" *In re Alexis S.*, No. E2020-00405-COA-R3-PT, 2020 WL 6375876, at *2 (Tenn. Ct. App. Oct. 30, 2020) (quoting *Raleigh Commons, Inc.*, 580 S.W.3d at 129-30). "Any proceedings on remand which are contrary to the directions contained in the mandate from the appellate court may be considered null and void." *Raleigh Commons, Inc.*, 580 S.W.3d at 129 (quoting *Silvey v. Silvey*, No. E2003-00586-COA-R3-CV, 2004 WL 508481, at *3 (Tenn. Ct. App. Mar. 16, 2004)).

In the prior opinion of this Court, we held that genuine issues of material fact existed regarding whether proper notice was given, and therefore, "summary judgment in favor of either party was inappropriate." *Bank of New York Mellon*, 2020 WL 563527, at *10. We reversed the trial court's ruling granting Bank's motion for summary judgment and dismissing Ms. Chamberlain's counterclaim for breach of contract. *Id.* The opinion itself remanded "for further proceedings" without elaboration. *Id.* at *11. Our judgment remanded "for further proceedings consistent with the Opinion." Thus, we discern nothing in this Court's prior opinion that limited the scope of remand. Having concluded that summary judgment could not be awarded to either party, the remanded case stood exactly as it did prior to the appeal, except insofar as it was changed by our opinion. The trial court was authorized to entertain Bank's motion to amend its answer to the counterclaim on remand.

The situation before us is much like the one presented in *Freeman Industries LLC v. Eastman Chemical Company*, 227 S.W.3d 561 (Tenn. Ct. App. 2006). That case was remanded by the Tennessee Supreme Court to a trial court "for further proceedings consistent with [its] opinion." *Id.* at 562. The Tennessee Supreme Court's decision, via interlocutory appeal, had established a new pleading standard for Tennessee Trade Practice Act claims and held that the plaintiff's complaint did not state a cause of action under that new standard. *Id.* It also held that the trial court erred in denying the defendants' motion for summary judgment on the only other claim (for unjust enrichment). *Id.* On remand, the plaintiff moved to amend its complaint in order to plead its TPPA claim under the new standard. *Id.* at 565. However, the trial court denied the motion to amend, interpreting the remand "for further proceedings consistent with this opinion" to mean that the case was "over" and that the trial court would lack jurisdiction to grant a motion to amend the complaint on remand. *Id.*

On appeal, this Court reversed. *Id.* at 562. We first explained that "Tennessee law

has a history of favoring amendments," as "[a] plethora of cases illustrates the willingness of Tennessee courts to permit amendments under Rule 15.01." *Id.* at 566. We concluded that the trial court had correctly expressed a willingness to permit the amendment but that it ultimately "did not believe that it had the authority to allow such an amendment after the Supreme Court's remand." *Id.* at 567. On this latter point, we disagreed with the trial court. We acknowledged that "a trial court may not disregard or modify the opinion of an appellate court" but also emphasized that "a trial court is not necessarily powerless to conduct any proceedings on remand." *Id.* We explained,

> Once the mandate [from an appellate court] reinvests the trial court's jurisdiction over a case, the case stands in the same posture it did before the appeal except insofar as the trial court's judgment has been changed or modified by the appellate court. . . . [T]he trial court does not have the authority to modify or revise the appellate court's opinion, or to expand the proceedings beyond the remand order. The trial court's sole responsibility is to carefully comply with directions in the appellate court's opinion.

*Id.* (quoting *Earls v. Earls*, No. M1999-00035-COA-R3-CV, 2001 WL 504905, at *3 (Tenn. Ct. App. May 14, 2001)). Applying these principles, we noted that the Supreme Court had remanded for further proceedings consistent with its opinion but that it "did not give particular instructions upon remand." *Id.* Notably, the Supreme Court "did not direct the trial court to enter an order dismissing [the] TPPA claim, nor did the Supreme Court enter a final judgment itself." *Id.* The instruction to conduct "further proceedings consistent with this opinion," we concluded, "did not restrict the trial court's authority to allow an amendment to [the] complaint." *Id.* We continued,

> As we noted earlier, on remand a trial court is vested with authority to proceed with the case in accordance with the appellate court's instructions. The absence of specific language from the Supreme Court allowing [the plaintiff] to amend its Complaint on remand does not mean that the trial court is forbidden from granting leave to amend; such would only be the situation if the Supreme Court had directed entry of a judgment in the case or otherwise stated in unequivocal terms that [the plaintiff] was not entitled to amend its Complaint on remand. We find no such language in the Supreme Court's opinion or mandate in this case.

*Id.* at 568. As such, we concluded that "the trial court did indeed have the authority to grant [the] motion to amend," and we further held that it abused its discretion by denying the motion. *Id.* We remanded for the trial court to permit the amendment. *Id.* at 569.

As in *Freeman Industries*, we conclude that this Court's prior opinion did not deprive the trial court of the authority to grant a motion to amend on remand. We now address Ms. Chamberlain's alternative argument that the trial court abused its discretion in

- 12 -

permitting an amendment under the circumstances of this case. Again, the trial court found that Rule 15 provides for amendments to be freely given when justice so requires. It also noted that the rule was intended to ensure that cases and controversies are determined on their merits and not legal technicalities. The trial court recited the factors to be considered in deciding whether to allow an amendment and concluded that they weighed in favor of permitting an amendment here. It found the motion timely because no scheduling order had been entered and no trial date had been set. It also found that Ms. Chamberlain would not suffer prejudice because no discovery had taken place. Finally, it noted that Ms. Chamberlain had also made an oral motion for leave to amend her own answer to assert additional affirmative defenses, which the court granted for the same reasons. We discern no abuse of discretion under these circumstances. *See Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 741 (Tenn. 2013) (recognizing "the time-honored principle that the determination of whether to allow an amendment to the pleadings is left to the sound discretion of the trial court") (internal quotation omitted); *Harris v. St. Mary's Med. Ctr., Inc.*, 726 S.W.2d 902, 904 (Tenn. 1987) ("Amended pleadings may be filed before trial, after trial, or even after appeal so long as the trial court has jurisdiction and so long as the trial court does not abuse its discretion in allowing the amendment.").[2]

### *B.    Res Judicata*

Next, we will address Ms. Chamberlain's contention that the trial court erred in finding that res judicata barred her claim/defense of "Wrongful Foreclosure – Breach of Contract." "A trial court's determination of the applicability of res judicata . . . is a question of law, which we review de novo with no presumption of correctness." *In re Taylor B.W.*, 397 S.W.3d 105, 111 (Tenn. 2013).

At the outset, we note the parties' disagreement as to whether the issue of res judicata should be decided under federal law or state law. "For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). As a result, "state claim-preclusion law controls the preclusive effect of a federal dismissal in a diversity case unless state law sufficiently undermines federal interests." *Cooper v. Glasser*, 419 S.W.3d 924, 929 (Tenn. 2013). In the case at bar, the 2012 complaint was filed by Ms. Chamberlain and Ms. Dauenhauer in Tennessee state court, but it was removed to federal district court

---

[2] We note that Bank presented an alternative issue regarding whether Ms. Chamberlain should be "precluded from challenging" the order granting both parties leave to amend because she received the same relief. However, we do not have a transcript of the hearing at which her oral motion was made in order to fully examine the circumstances surrounding her request. Thus, we deem it appropriate to resolve this issue on its merits rather than Bank's alternative argument. *See, e.g.*, *In re Montana R.T.*, No. E2011-00755-COA-R3-PT, 2012 WL 2499498, at *5 (Tenn. Ct. App. June 29, 2012) (assuming *arguendo* that a party could contest an order and finding his arguments unpersuasive on the merits). Bank's alternative issue is pretermitted.

based on diversity of the parties. *See Dauenhauer v. Bank of New York Mellon*, No. 3:12-CV-01026, 2013 WL 209250, at *2 (M.D. Tenn. Jan. 16, 2013) (explaining that the defendants had removed the case to federal court and applying the rules for "actions brought under federal diversity jurisdiction"). Thus, Tennessee's claim preclusion law controls the preclusive effect of the federal dismissal. Neither party argues that state law would undermine federal interests in this circumstance, and we do not find that to be the case.

Under Tennessee law,

A party relying on res judicata must establish four elements: "(1) that the underlying judgment was rendered by a court of competent jurisdiction; (2) that the same parties or their privies were involved in both suits; (3) that the same claim or cause of action was asserted in both suits; and (4) that the underlying judgment was final and on the merits."

*Recipient of Final Expunction Ord. in McNairy Cnty. Cir. Ct. Case No. 3279 v. Rausch*, 645 S.W.3d. 160, 172 (Tenn. 2022) (quoting *Regions Bank v. Prager*, 625 S.W.3d 842, 848 (Tenn. 2021)).[3] Ms. Chamberlain does not appear to dispute three elements -- that the first action resulted in a judgment rendered by a court of competent jurisdiction; the same parties were involved in both suits; and the underlying judgment was final and on the merits. She only appears to challenge the third element – whether the same claim or cause of action was asserted in both suits.

In 2009, the Tennessee Supreme Court joined "the majority of the federal courts and numerous states" by adopting "the transactional standard for determining whether a prior judgment and a pending suit are the same cause of action for purposes of applying res judicata." *Creech v. Addington*, 281 S.W.3d 363, 380 (Tenn. 2009). As the Court explained,

[T]he "transactional" standard, provides as follows:

When a valid and final judgment rendered in an action

---

[3] For comparison, under federal law,

"A claim is barred by the res judicata [or claim preclusive] effect of prior litigation if all of the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action."

*Trustees of Operating Engineers Loc. 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 380 (6th Cir. 2019) (quoting *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002)).

- 14 -

extinguishes the plaintiff's claim . . . , the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

Restatement (Second) of Judgments § 24(1). Under the Restatement standard, "the concept of a transaction is . . . used in the broad sense," and "connotes a natural grouping or common nucleus of operative facts." *Id.* § 24 cmt. b.

*Id.* at 379-80. The transactional approach "reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." *Id.* at 381 (quoting Restatement (Second) of Judgments § 24 cmt. a). "Two suits, therefore, shall be deemed the same 'cause of action' for purposes of res judicata where they arise out of the same transaction or a series of connected transactions." *Id.* The Supreme Court noted, however, that "even where two claims arise out of the same transaction, the second suit is not barred by res judicata unless the plaintiffs had the opportunity in the first suit to fully and fairly litigate the particular issue giving rise to the second suit." *Id.* at 382.

This Court has repeatedly applied these principles in cases involving foreclosure. In *Davis v. Williams*, No. E2010-01139-COA-R3-CV, 2011 WL 335069, at *1 (Tenn. Ct. App. Jan. 31, 2011), the first suit was an unlawful detainer action in general sessions court, and the second was a suit to set aside the foreclosure sale on the basis that the note and deed of trust listed an incorrect amount owed, and therefore, the buyers were not in default. *Id.* The trial court found the second suit barred by res judicata. *Id.* at *2. On appeal, the sellers conceded that the general sessions court in Loudon County did not have jurisdiction to entertain the question of title acquired through the foreclosure. *Id.* The buyers conceded that they could have asserted wrongful foreclosure as a *defense* to possession in the prior detainer action, but the alleged fraud could not have been asserted "as an original claim to set aside the foreclosure sale." *Id.* They argued that "even though the general sessions court could have denied the Sellers possession based on the defense of wrongful possession, its inability to set aside the foreclosure and vest title in them rather than the Sellers means that its judgment does not have preclusive effect." *Id.* We disagreed, explaining:

It is a fundamental principle of jurisprudence that material facts or questions, which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions becomes res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action whether the subsequent action involves the same or a different form or proceedings, or whether the second action is upon the same or a different cause of action,

- 15 -

subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief.

*Id.* at *3 (quoting *Gerber v. Holcomb*, 219 S.W.3d 914, 919 (Tenn. Ct. App. 2006)). As such, by failing to raise the matters concerning fraud in the foreclosure, "which could have been litigated and decided as an incident to or essentially connected with the subject matter of the prior litigation," the buyers forfeited their opportunity to assert fraud in a later action. *Id.* at *4. Both cases "arose out of the same transaction or series of connected transactions" and were considered the same cause of action for purposes of res judicata. *Id.*; *see also Foster v. Fed. Nat'l Mortg. Ass'n*, No. E2012-02346-COA-R3-CV, 2013 WL 3961193, at *4 (Tenn. Ct. App. July 31, 2013) ("[T]he unlawful detainer action . . . decided by the general sessions court . . . and this second action, including all claims asserted by the Fosters, each of which is based on or pertaining to the alleged wrongful foreclosure, arose out of the same series of connected transactions."). "It is therefore clear from the relevant case law that the doctrine of *res judicata* may serve to preclude a challenge to foreclosure when a final judgment in a previous adjudication of that same foreclosure has been rendered in general sessions court." *Love v. Fed. Nat'l Mortg. Ass'n*, 472 S.W.3d 272, 278 (Tenn. Ct. App. 2015).

The same holds true when the previous lawsuit was in federal court. For instance, in *Whitsey v. Williamson Cnty. Bank*, 700 S.W.2d 562, 562-63 (Tenn. Ct. App. 1985), the plaintiffs filed suit against a bank seeking damages for wrongful foreclosure of a trust deed, but they had previously filed a complaint in federal district court challenging the foreclosure on various grounds. The trial court dismissed the second action, and this Court affirmed. *Id.* at 564-65. The plaintiff argued that "the right of action concluded by the Federal judgment was not the same right of action asserted in the present action." *Id.* at 564. However, we disagreed, concluding that both were based on an alleged failure to inform the plaintiffs of the details of the loan as required by law. *Id.* The "verbose embellishments" added to the second complaint did not "amount to assertion of a separate and distinct right of action" for purposes of res judicata. *Id.* We explained that "[a] judgment in a particular action is res judicata as to all claims and issues which were relevant to and which could reasonably have been litigated in the prior action," and this holds true "even though the prior case was in Federal Court and the subsequent suit is brought in a State Court." *Id.*

Likewise, in *King v. Bank of America, N.A.*, No. W2018-01177-COA-R3-CV, 2020 WL 7861368, at *1 (Tenn. Ct. App. Dec. 29, 2020), the plaintiff filed suit in state court seeking to set aside a foreclosure after she had filed two unsuccessful lawsuits in federal district court and unsuccessfully defended against an unlawful detainer action in general sessions court. The trial court dismissed on the basis of res judicata, and this Court affirmed. *Id.* The plaintiff argued that "not all claims raised by her in the instant complaint

were addressed in prior actions." *Id*. at \*8.  However, this was not the appropriate inquiry. We emphasized that res judicata bars "'all issues which were, <u>or could have been</u>, litigated in the former suit.'"  *Id.* (quoting *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012)). Applying the transactional standard, the prior cases all involved "the same cause of action." *Id.* at \*9.  Although the plaintiff had attempted to refashion the allegations to assert claims not stated before, they "either had been adjudicated or could have been litigated previously."  *Id.*  Thus, the complaint was barred by res judicata because the allegations arose "from the same transaction: the foreclosure sale or impending foreclosure sale of the Property."  *Id.*

As previously discussed, in Ms. Chamberlain's lawsuit that was removed to federal court, she and Ms. Dauenhauer sought to enjoin the foreclosure sale and asserted six counts: complaint to quiet title; fraud; violation of the Fair Debt Collections Practices Act; violation of the Tennessee Consumer Protection Act; civil conspiracy; and slander of title. Although they did not assert a claim for breach of contract, within the factual allegations of the complaint, they alleged that the trustee had "failed to comply with the specific advertisement and/or notice requirements in the deed of trust" and that "Tennessee law requires strict compliance with the terms of the deed of trust in order for any . . . foreclosure, to be valid."  They acknowledged that they were sent a letter on May 23, 2011, "seeking payment from Plaintiff and indicating that the current principal balance on the loan is $667,243.70," but they made no allegation about a failure to provide notice of acceleration prior to the May 2011 letter.  In describing the factual background of the case, the district court's opinion stated:

> Plaintiffs received at least two letters indicating they were in default on their loan. A letter dated Sept. 9, 2009, stated that a default had occurred and Defendant BNYM—which then claimed to be the beneficiary of Plaintiffs' DoT—had named Defendant ReconTrust as a substitute trustee for the DoT. (Doc. No. 1–1 at 48.) Plaintiffs also received a letter and notice from ReconTrust, dated May 23, 2011, stating that Plaintiffs' default had triggered acceleration of their loan and that ReconTrust would hold a non judicial foreclosure sale of the property on July 1, 2011. (Doc. No. 1–1 at 136–41.)

*Dauenhauer v. Bank of New York Mellon*, No. 3:12-CV-01026, 2013 WL 2359602, at \*1 (M.D. Tenn. May 28, 2013), *aff'd*, 562 F. App'x 473 (6th Cir. 2014).  The opinion states that Ms. Chamberlain and Ms. Dauenhauer alleged "they have not received an accounting of their loan and, until they receive one, they deny they are in default."  *Id.*  In dismissing the fraud claim, however, the district court stated that "[the plaintiffs] have provided no facts to indicate that they were not in default and that the Note holder did not have the right to initiate foreclosure proceedings."  *Id.* at \*8.  The Sixth Circuit reached the same conclusion: "Borrowers provide no facts to indicate that they were not in default, or that the Note holder did not have the right to initiate foreclosure proceedings."  *Dauenhauer v. Bank of New York Mellon*, 562 F. App'x 473, 482 (6th Cir. 2014).

Applying the transactional approach, the claims asserted in the federal court action clearly arose from the same transaction at issue in this case: the foreclosure (or impending foreclosure) of the property. Nevertheless, Ms. Chamberlain argues on appeal that she could not assert a "wrongful foreclosure" defense to a detainer action until the foreclosure actually occurred in 2017 and Bank then filed a detainer action. She also argues that her claim was not ripe until a foreclosure sale actually occurred.

It is helpful at this point to examine this Court's recent discussion in *Case v. Wilmington Trust, N.A. as Trustee for Trust MFRA 2014-2*, No. E2021-00378-COA-R3-CV, 2022 WL 2313548, at *7 (Tenn. Ct. App. June 28, 2022), in which we sought to "clarify any distinction between the causes of action of 'wrongful foreclosure' and 'breach of contract[.]'" In that case, the plaintiff's "wrongful foreclosure claim" was "predicated" on his argument that the defendants did not comply with the notice requirements outlined in the deed of trust. *Id.* We recognized that "[w]rongful foreclosure can be asserted as a 'primary cause of action when a mortgagor asserts that a foreclosure action is improper under a deed of trust.'" *Id.* (quoting *Garner v. Coffee Cnty. Bank*, No. M2014-01956-COA-R3-CV, 2015 WL 6445601, at *10 (Tenn. Ct. App. Oct. 23, 2015)). However, we also explained:

> Based on our review of Tennessee case law, the difference between a wrongful foreclosure action and a breach of contract action in the context of foreclosure is often unclear. Wrongful foreclosure may be asserted as its own cause of action, an affirmative defense to an unlawful detainer action, or as a theory of a breach of contract or tort claim. *Garner*, 2015 WL 6445601, at *10 ("Wrongful foreclosure can be asserted as an affirmative defense by a mortgagor in an unlawful detainer action brought by a purchaser of property in foreclosure or as a primary cause of action when a mortgagor asserts that a foreclosure action is improper under a deed of trust.") (internal citations omitted); *Jerles v. Phillips*, No. M2005-1494-COA-R3-CV, 2006 WL 2450400, at *3 (Tenn. Ct. App. Aug. 22, 2006) (stating that the plaintiff's amended complaint included "breach of contract for wrongful foreclosure"); *Beal Bank, SSB v. Prince*, No. M2011-02744-COA-R3-CV, 2013 WL 411452, at *1 (Tenn. Ct. App. Jan. 31, 2013) (plaintiffs alleging negligent infliction of emotional distress arising out of an alleged wrongful foreclosure of their residence); *Miltier v. Bank of Am., N.A.*, No. E2010-00537-COA-R3-CV, 2011 WL 1166746, at *1 (Tenn. Ct. App. Mar. 30, 2011) ("This is a tort action for wrongful foreclosure.").
>
> The United States District Court for the Middle District of Tennessee has succinctly described the independent cause of action of wrongful foreclosure in Tennessee as follows:
>
>> There are no specific elements for a wrongful foreclosure claim under Tennessee law. *Ogle v. U.S. Bank*

*Nat'l Ass'n for Residential Asset Sec. Corp.*, No. 1:17-CV-40-TAV-CHS, 2018 WL 1324137, at *3 (E.D. Tenn. Mar. 14, 2018). As many federal district courts in this state have noted, however, "Tennessee courts generally examine whether contractual or statutory requirements were met in the foreclosure of the property in question." *Ringold v. Bank of Am. Home Loans*, No. 2:12-cv-02344, 2013 WL 1450929, at *6 (W.D. Tenn. Apr. 9, 2013).

Tennessee courts have historically required "strict compliance with the advertisement and notice terms as provided in the deed of trust." *Fed. Nat'l Mortg. Ass'n v. Robilio*, No. W2007-01758-COA-R3-CV, 2008 WL 2502114, at *7 (Tenn. Ct. App. June 24, 2008) (citing *Henderson v. Galloway*, 27 Tenn. 692, 695-96 (Tenn. 1848)). A trustee's failure to comply with the clear terms of the deed of trust pertaining to foreclosure will render a subsequent conveyance invalid. *Id.* (citing *Progressive Bldg. & Loan Ass'n v. McIntyre*, 89 S.W.2d 336, 336 (Tenn. 1936)).

*Amodio v. Ocwen Loan Servicing, LLC*, No. 3:18-CV-00811, 2018 WL 6727106, at *3 (M.D. Tenn. Dec. 21, 2018).[4] Within a wrongful foreclosure cause of action, there is no requirement that a borrower establish damages as with a breach of contract claim; instead, a trustee's mere failure to comply with the terms of a deed of trust will render the foreclosure sale invalid.

*Id.* at *8. Thus, the Court recognized that "wrongful foreclosure may be raised as a theory of a breach of contract claim," or alternatively, "a plaintiff may bring a wrongful foreclosure claim independent and distinct from a breach of contract claim." *Id.* at *9.

Here, Ms. Chamberlain entitled her counterclaim as one for "Wrongful Foreclosure – Breach of Contract." Within that single count, she asserted that Bank's failure to provide notice prior to acceleration pursuant to paragraph 22 of the deed of trust rendered the foreclosure null and void and caused her to suffer damages. When she amended her answer after remand, she also asserted the affirmative defense of wrongful foreclosure for failure to comply with paragraph 22. Notably, then, the sole substantive basis asserted for her claim and defense was that Bank breached the deed of trust by failing to provide notice prior to acceleration as required in paragraph 22. We conclude that Ms. Chamberlain could have pursued this substantive issue in her federal court action in which she sought to

---

[4] In citing *Amodio*, we noted: "'Cases from other jurisdictions, including federal cases, are always instructive, sometimes persuasive, but never controlling in our decisions.'" *Case*, 2022 WL 2313548, at *8 n.5. (quoting *Summers Hardware & Supply Co., Inc. v. Steele*, 794 S.W.2d 358, 362 (Tenn. Ct. App. 1990)). However, we found "the *Amodio* district court's analysis of wrongful foreclosure under Tennessee law to be instructive and reflective of Tennessee case law." *Id.*

- 19 -

prevent foreclosure in the first place.

We do recognize, as noted by a federal district court within the Sixth Circuit, that "several district courts have dismissed wrongful foreclosure claims because a foreclosure sale had not occurred at the time the complaint was filed or dismissed." *Poole v. Fed. Nat'l Mortg. Ass'n*, No. 1:15-CV-1261, 2016 WL 3085765, at *3 (W.D. Mich. June 2, 2016) (discussing cases). As one example, the district court in *Poole* cited *Harris v. LNV Corp.*, No. 3-12-0552, 2014 WL 3015293, at *4 (M.D. Tenn. July 2, 2014). In *Harris*, the district court reasoned,

> Since Defendants have not yet conducted a foreclosure sale, (DE 59, p. 20), Plaintiff's claim of wrongful foreclosure is not yet ripe for review. See Tenn. Code. Ann. § 35-5-101 (providing the requirements for foreclosure proceedings). . . .
> Though there are no specific elements of wrongful foreclosure, to state such a claim the claimant must show that a "legally held, conducted and consummated" foreclosure involved "irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee that caused or contributed to an inadequate price, for a court of equity to set aside the sale." *CitiMortage, Inc. v. Drake*, 410 S.W.3d 797, 802 (Tenn. Ct. App. 2013), appeal denied (Aug. 14, 2013) (citation removed) (emphasis removed)). Defendants have not yet held, conducted, or consummated a foreclosure proceeding, and until they do so, the Court lacks jurisdiction to consider Plaintiff's wrongful foreclosure claim.

*Id.* at *11. In *Sandlin v. CitiMortgage, Inc.*, No. 2:19-cv-02368-JTF-atc, 2021 WL 1581771, at *9 (W.D. Tenn. Mar. 1, 2021), *report and recommendation adopted*, 2021 WL 1156627 (W.D. Tenn. Mar. 26, 2021), another district court reached the same result, relying on additional language from *Harris*, stating, "Though Tennessee courts have not announced specific elements for wrongful foreclosure, the commonality between all reported and non-reported cases alike is the occurrence of an actual foreclosure on property. Until a foreclosure has occurred, the issue is not ripe for review[.]" (internal quotations omitted). *See also Parker v. Regions Bank*, No. 3:19-CV-00973, 2020 WL 6493995, at *2 (M.D. Tenn. Mar. 4, 2020) (dismissing a wrongful foreclosure claim for lack of ripeness where the foreclosure sale had not yet occurred, relying on *Harris*).[5]

The district court in *Poole* therefore recognized that, under the reasoning of the cases it discussed from Tennessee and elsewhere, "a *so-called wrongful foreclosure claim*—one seeking to *set aside* a foreclosure sale for noncompliance with the statutory requirements—

---

[5] Our research has not revealed any cases from appellate courts of this State dismissing claims for wrongful foreclosure based on lack of ripeness, and we express no opinion as to the accuracy of the district courts' conclusions regarding Tennessee law on this issue. We simply discuss those decisions to the extent that they are relevant to Ms. Chamberlain's claimed inability to pursue her claim in district court.

cannot be ripe until a foreclosure sale actually occurs." *Poole*, 2016 WL 3085765, at \*3 (emphasis added). "However," the district court continued, it saw "no reason why a homeowner cannot seek relief from a court before a foreclosure sale occurs by seeking a declaratory judgment that the lender is not entitled to foreclose because it fails to meet one or more of the statutory requirements." *Id.* The district court opined that "a borrower's request for a declaratory judgment that an impending foreclosure sale will not meet the statutory requirements would satisfy the ripeness test." *Id.* at \*4.

Applying the same rationale, we conclude that Ms. Chamberlain's claimed inability to assert a so-called "wrongful foreclosure" claim or defense in the prior action in district court does not mean that she could not have asserted her underlying argument regarding improper notice under the deed of trust. In fact, some of the very opinions in federal district courts dismissing claims for "wrongful foreclosure" on grounds of ripeness have permitted other claims, such as those for breach of contract, to proceed. *See, e.g.*, *Parker v. Regions Bank*, No. 3:19-CV-00973, 2020 WL 6493995, at \*2-3 (M.D. Tenn. Mar. 4, 2020) (dismissing "Count I, for wrongful foreclosure" for lack of ripeness where the sale had not occurred but considering a separate breach of contract claim alleging that sections of the deed of trust were breached); *Harris v. LNV Corp.*, No. 3-12-0552, 2014 WL 3015293, at \*10-11 (M.D. Tenn. July 2, 2014) (concluding that a "claim of wrongful foreclosure" was not yet ripe but considering the separate claim for breach of contract); *see also Hossain v. Ocwen Loan Servicing, LLC*, No. 3:14-0002, 2016 WL 6138628, at \*2 (M.D. Tenn. Oct. 21, 2016), *report and recommendation adopted*, 2016 WL 6995657 (M.D. Tenn. Nov. 30, 2016) (stating that "a claim for wrongful foreclosure . . . under Tennessee law . . . requires that a foreclosure actually occur" but noting that "[t]o the extent that Plaintiff complains that [Defendant] took actions related to the proposed foreclosure that violated 'contractual requirements' . . . , he has already asserted a breach of contract claim")*.* We note that in *Ross v. Wells Fargo Bank, N.A.*, No. 13-CV-11858, 2013 WL 5291671, at \*5 (E.D. Mich. Sept. 19, 2013), a district court found that a plaintiff's breach of contract claim "should have been litigated" in his prior lawsuits seeking to halt the foreclosure where the agreements at issue "necessarily must have existed and been breached prior to the foreclosure" and his "claims for breach of those agreements therefore were ripe at the time the prior cases were filed." Similarly, in *Chapman v. JPMorgan Chase Bank, N.A.*, 651 F. App'x 508, 509-10 (6th Cir. (Tenn.) 2016), the Sixth Circuit rejected an argument that the plaintiffs' claim seeking damages for "lack-of-notice" could not have been asserted in a previous lawsuit that was filed in an effort to prevent foreclosure. The notice at issue was allegedly not provided at the time of closing. *Id.* at 510. As such, the Sixth Circuit concluded that the plaintiffs "could have, and 'should have,' brought their claims for failure to provide notice in their earlier lawsuit." *Id.* The alleged violation occurred "long before" their first suit and "[n]othing prevented the [plaintiffs] from incorporating their lack-of-notice claims in the previous complaint." *Id.*

Thus, Ms. Chamberlain's argument regarding her claimed inability to bring a so-called "wrongful foreclosure" claim or defense in the federal court action is not dispositive.

- 21 -

Aside from seeking declaratory or injunctive relief, Ms. Chamberlain could have asserted that Bank failed to comply with the notice provision of the deed of trust through a breach of contract claim. *See Case*, 2022 WL 2313548, at *8; *see, e.g.*, *Sandlin v. Citibank, N.A.*, No. 2:15-cv-02768-JTF-dkv, 2018 WL 2370769, at *2-8 (W.D. Tenn. Mar. 26, 2018) (considering a plaintiff's pre-foreclosure breach of contract claim and request for declaratory relief alleging that the defendant breached the mortgage agreement by improperly accelerating the debt); *Robertson v. US Bank, N.A.*, No. 14-2677, 2015 WL 12532148, at *9-11 (W.D. Tenn. Oct. 20, 2015), *aff'd*, 831 F.3d 757 (6th Cir. 2016) (considering the plaintiffs' pre-foreclosure argument that they were not provided with an acceleration letter complying with paragraph 22 and therefore the bank should be precluded from foreclosing on the property); *Kinard v. Nationstar Mortg. LLC*, 572 S.W.3d 197, 201 (Tenn. Ct. App. 2018) (considering a "Petition to Enjoin Foreclosure Sale and Complaint for Damages" seeking injunctive relief with regard to a scheduled foreclosure and asserting a claim for breach of contract for failure to provide payoff information); *Robinson v. MERS, Inc.*, No. E2010-01592-COA-R3-CV, 2011 WL 1642104, at *1 (Tenn. Ct. App. Apr. 29, 2011) (considering a pre-foreclosure breach of contract claim asserted in an effort "to stop what [plaintiff] alleged was a wrongful foreclosure").

"Requiring the subsequent cause of action to be identical in all respects to the original cause of action is too narrow a reading of the doctrine of res judicata." *XL Sports, Ltd. v. $1,060,000 Plus Int. Traceable to Respondent*, No. W2005-00689-COA-R3-CV, 2006 WL 197103, at *9 (Tenn. Ct. App. Jan. 26, 2006). Res judicata "applies not only to issues that were raised and adjudicated in the prior lawsuit, but to all claims *and issues which were relevant and which could reasonably have been litigated* in a prior action." *Davidson v. Bredesen*, 330 S.W.3d 876, 884-85 (Tenn. Ct. App. 2009) (emphasis added, quotation omitted); *see, e.g.*, *Brooks v. First Franklin Fin. Corp*, No. 3:17-0953, 2018 WL 4677844, at *2-3, 7 (M.D. Tenn. Apr. 13, 2018), *report and recommendation adopted*, 2018 WL 3018947 (M.D. Tenn. June 18, 2018) (dismissing a "complaint for wrongful foreclosure" on the basis of res judicata despite the plaintiffs' argument that their claim "was not yet ripe" before foreclosure occurred and concluding that they had "full and fair opportunities in the state courts to raise every legal and factual claim they had regarding their legal rights to the Property and the legality of the foreclosure of the Property"). In fact, Ms. Chamberlain *did* allege in her prior suit that the trustee had "failed to comply with the specific advertisement and/or notice requirements in the deed of trust" and that "Tennessee law requires strict compliance with the terms of the deed of trust in order for any . . . foreclosure, to be valid." Thus, we find no merit in her suggestion that she was unable to raise her improper notice argument in her prior action seeking to prevent the foreclosure.

Ms. Chamberlain next argues that res judicata does not bar a subsequent suit when it alleges "new facts."[6] She concedes that "foreclosure had been initiated prior to the first

---

[6] "The doctrine of res judicata does not prevent courts from reconsidering a claim when 'the facts

- 22 -

lawsuit" but suggests that a new fact has now occurred due to the actual completion of the foreclosure sale and the filing of the detainer action. Ms. Chamberlain argues that once the federal court determined that Bank had the right to foreclose, it was required to do so in compliance with the deed of trust. However, the alleged failure to provide notice prior to acceleration of which Ms. Chamberlain complains (prior to May 2011) had already occurred at the time she filed suit to prevent the foreclosure in 2012. We faced a similar situation, procedurally speaking, in *Collins v. Greene County Bank*, 916 S.W.2d 941 (Tenn. Ct. App. 1995). The plaintiff had filed a previous lawsuit seeking to enjoin foreclosure on his home, and he later filed a second suit alleging fraudulent inducement to enter into the deed of trust. *Id.* at 945. The trial court found the second suit barred by res judicata, noting that

> [the prior action's] sole purpose [was] the enjoining of the foreclosure by the bank on the deed of trust. At that time, everything that could have been known about that situation was known. There were no belated revelations of fact. The only thing that occurred after that suit was the foreclosure and it occurred because the Court refused to enjoin it.

*Id.* at 946. On appeal, this Court agreed that the second action was barred by res judicata. *Id.* We concluded, "There are no new facts which were not known or new issues which could not have been presented at that time." *Id.* Simply put, we noted that "[a] plaintiff may not reserve a theory which supports his action for a second lawsuit." *Id.*; *see also Bank of New York Mellon v. Berry*, No. W2017-01213-COA-R3-CV, 2018 WL 930967, at *4 (Tenn. Ct. App. Feb. 15, 2018) ("Based on the transactional approach Tennessee follows, Ms. Berry was required to present all of her arguments regarding her challenge to the foreclosure of the Property in her 2012 lawsuit [in which she sought to prevent foreclosure]. To the extent she failed to do this, she is precluded from pursuing these claims now.").

In sum, we conclude that the elements of res judicata have been established and that Ms. Chamberlain's argument regarding improper notice under the deed of trust is barred due to her failure to raise it along with the host of other issues she asserted in the federal court litigation.[7] We affirm the trial court's ruling regarding res judicata.

---

have changed or new facts have occurred' that have altered the parties' legal rights and obligations." *Jackson*, 387 S.W.3d at 495 n.12 (quoting *Creech*, 281 S.W.3d at 381).

[7] We note that in a subsequent appeal in a separate case, the Sixth Circuit included the following observation regarding the *Dauenhauer* case and others filed by counsel for Ms. Chamberlain:

> Over the past few years, the district courts in this circuit, particularly in Tennessee, have entertained a spate of civil actions that advance legal theories similar to [Appellant's]. Like [Appellant's], many of these civil actions are scattershot affairs, tossing myriad (sometimes contradictory) legal theories at the court to see what sticks. To assist the district courts in addressing this wave of creative litigation, we will address each of [Appellant's] theories

### C. *Motion to Strike*

As a separate issue on appeal, Ms. Chamberlain questions whether the trial court erred in denying her motion to strike Bank's affirmative defenses. This Court provided a thorough explanation of the standards for appellate review of such motions in *Doe v. Mama Taori's Premium Pizza, LLC*, No. M1998-00992-COA-R9-CV, 2001 WL 327906, at \*2-3 (Tenn. Ct. App. Apr. 5, 2001):

> The purposes of a motion to strike under Tenn. R. Civ. P. 12.06 are (1) to eliminate redundant, immaterial, impertinent, or scandalous matter from pleadings, (2) to object to insufficient defenses, and (3) to enforce Tenn. R. Civ. P. 8.05's requirement that pleadings be simple, concise and direct. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (2d ed. 1990) ("*Federal Practice and Procedure*"). When used for their intended purpose, these motions help the parties and the courts avoid the time and money wasted litigating spurious issues by dispensing with these issues prior to trial. *Sidney-Vinstein v. A .H. Robbins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *United States v. Smuggler-Durant Mining Corp.*, 823 F.Supp. 873, 875 (D. Colo. 1993); *Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F.Supp. 19, 22 (E.D. Penn. 1992). Despite their salutary purpose, motions to strike are not favored because the remedy they offer is drastic and because they are frequently used simply as a dilatory tactic. *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs., Pty., Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981); *Morell v. United States*, 185 F.R.D. 116, 117 (D. P.R. 1999); 5A *Federal Practice and Procedure* § 1381, at 672; 2A James W. Moore, Moore's Federal Practice ¶ 12.21[2] (2d ed. 1995) ("*Moore's Federal Practice* ").
>
> A Tenn. R. Civ. P. 12.06 motion may be used to test the "legal sufficiency" of an affirmative defense. *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977). To succeed with a Tenn. R. Civ. P. 12.06 motion, the moving party must show both that the challenged claim or defense does not involve a question of fact or law on which the non-moving party can succeed and that failure to strike the challenged claim or defense will be prejudicial to the moving party. *SEC v. McCaskey*, 56 F.Supp.2d 323, 326 (S.D.N.Y. 1999); *Abrams v. Lightolier, Inc.*, 702 F.Supp. 509, 511 (D. N.J. 1988); 5A *Federal Practice and Procedure* § 1380. Prejudice for the purpose of a Tenn. R. Civ. P. 12.06 motion arises when the challenged claim or defense has the

---

in detail.

*Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 748 (6th Cir. 2014). The Sixth Circuit cited specific cases as examples, including *Dauenhauer*, and noted that several of the cases "all involve the same attorney." *Id.* at 748 n.2.

effect of confusing the issues or is so lengthy and complex that it places an undue burden on the moving party. *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 11 F.Supp.2d 1006, 1009-10 (N.D. Ill. 1998).

Whether a particular defense is insufficient for the purposes of a Tenn. R. Civ. P. 12.06 motion depends on the nature of the claim. 5A *Federal Practice and Procedure* § 1381. An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance or if it bears no possible relationship to the matters in controversy. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); *FSLIC v. Burdette*, 696 F. Supp. 1183, 1186 (E.D. Tenn. 1988). A motion to strike a defense should not be granted if there is any doubt that the challenged claim or defense might raise an issue of fact or law, *Nwakpuda v. Falley's, Inc.*, 14 F.Supp.2d 1213, 1215 (D. Kan. 1998); *Sunshine Cellular v. Vanguard Cellular Sys., Inc.*, 810 F. Supp. 486, 499-500 (S.D. N.Y. 1992); 2A *Moore's Federal Practice* ¶ 12:21[2], or if the insufficiency of the defense is not readily apparent. 5A *Federal Practice and Procedure* § 1381, at 678.

Trial courts have considerable discretion with regard to granting Tenn. R. Civ. P. 12.06 motions. *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir.2000); *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988); *Krisa v. Equitable Life Assurance Soc'y*, 109 F.Supp.2d 316, 319 (M.D. Penn. 2000). Accordingly, appellate courts review decisions regarding Tenn. R. Civ. P. 12.06 motions using the deferential "abuse of discretion" standard of review.

*Id.* at *2-3 (footnote omitted).

On appeal, Ms. Chamberlain fails to mention any of these standards for review. She simply argues, "[Bank] raised affirmative defenses in response to [Ms. Chamberlain's] breach of contract claim. None of [Bank's] affirmative defenses have merit." She then proceeds to analyze the merits of Bank's affirmative defenses. We have already concluded, in the previous section of this opinion, that Bank's res judicata defense was meritorious. As such, we reject Ms. Chamberlain's sole argument on appeal as to why the affirmative defense of res judicata should have been stricken.[8] We decline to analyze the merits of Bank's other affirmative defenses, ranging from the statute of limitations to lack of

---

[8] We note that Ms. Chamberlain raises one additional argument in this section of her brief that was not raised in the section regarding res judicata. She suggests that any breach regarding failure to provide proper notice would not have been a material breach until the foreclosure sale was completed. However, as noted by Bank, she cites no authority in support of this argument. Therefore, we deem it waived. *See Sneed v. Bd. of Prof'l Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").

standing to unclean hands. Those defenses, while included in Bank's answer, were not the basis for Bank's motion for summary judgment in this case. As a result, any opinion as to the merits of those affirmative defenses or whether they should have been stricken from the answer would not affect the outcome of this appeal. We therefore deem those issues pretermitted. *See Certain Underwriters at Lloyds, London v. Winestone*, 182 S.W.3d 342, 349 (Tenn. Ct. App. 2005) ("[O]ur holding above . . . pretermits Lloyd's final argument, since a specific request for contribution and indemnification would not affect the outcome of this appeal."); *State v. R.A.W.*, No. E2003-00847-COA-R3-PT, 2003 WL 22794471, at *8 (Tenn. Ct. App. Nov. 25, 2003) ("Due to our resolution of the preceding issues, all remaining issues are pretermitted as they would not affect the outcome of this appeal.").

### D. Constructive Possession

Finally, Ms. Chamberlain argued on appeal that the trial court erred in finding that Bank was in constructive possession of the property. However, the basis for her argument is that "[Bank] did not conduct the sale pursuant to paragraph 22 and therefore they lacked authority to sell [her] property at foreclosure." Having found that Ms. Chamberlain is barred from raising this argument in this litigation, we affirm the trial court's finding on this issue.

### IV. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed and remanded. All other issues are pretermitted. Costs of this appeal are taxed to the appellant, Helen E. Chamberlain, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE